W. H. PIKE, Respondent, v. GEORGE A. EDDY and
H. C. CROSS, Receivers of The Missouri, Kansas
& Texas Railway Company, Appellants.

St. Louis Court of Appeals, April 4, 1893.

1. **Railroads:** LIABILITY FOR CLEANING OR UNLOADING OF CATTLE
CARS. If a railway furnishes cattle cars in order that ties should be
loaded thereon, and these cars contain such an accumulation of refuse
matter, resulting from the carriage of cattle, that the loading
of the ties on them necessarily involves the ejection of some of this
refuse matter, such ejection constitutes an unloading of the
matter by the railway company within the purview of the statutory
inhibition (Revised Statutes, section 2669), though the ties are loaded
on the cars by the servants of an independent contractor.

2. ———: ———. But *semble* that the fact, that the loading of the ties
by these servants reasonably and properly involved the ejection of
this matter, is not sufficient to render the ejection an unloading of
the matter by the railway company, so as to subject it to liability
under the statute.

3. **Practice, Appellate:** NON-PREJUDICIAL ERROR IN INSTRUCTIONS.
The misdirection of the jury is held not to have been prejudicial
error, since a re-trial under proper instructions would not be likely,
and ought not under the undisputed evidence to lead to a different
result.

4. **Instructions:** SUPPLYING BY ONE INSTRUCTION AN OMISSION IN
ANOTHER. When the plaintiff's instructions manifestly imply what
the defendant's instructions directly assert, there is no inconsistency,
and the instructions as a whole will be deemed sufficient in this
regard.

*Appeal from the Monroe Circuit Court.*—HON. THOMAS
H. BACON, Judge.

AFFIRMED.

*Jackson & Montgomery*, for appellants.

No brief filed for respondent.

BOND, J.—This was an action to recover the value of a cow, alleged to have died from Texas fever communicated by matter cleaned from defendants' cars in violation of section 2669, Revised Statutes of 1889. The evidence tended to show that about the eighteenth of June, 1890, the defendants caused some of their cattle cars to be carried to Clapper station in Monroe county, Missouri, for the purpose of receiving a lot of ties which were placed upon their cars by gangs of negroes called tie-loaders; that the work of loading the cars was done under the supervision of Mr. Diltz, who was a division road-master of the defendants; that the cars on which the ties were placed had accumulated refuse matter and prairie hay, etc., to the depth of several inches on their floors, incident to their use in carrying cattle; that the tie-loaders, while engaged in their work, kicked out or otherwise threw out a considerable quantity of the aforesaid matter from the floors of the cars to facilitate the loading thereof; and that the place where it was deposited was on unfenced and uninclosed ground, thirty or forty feet from the station house, and near a public road. The evidence tended to show that the plaintiff's cow passed over the heap of matter shortly after it had been thrown from defendants' cars, and that this cow and some of the cattle of other parties, which had also traversed this locality, died of Texas fever; that on the day after the deposit of this matter it rained very hard; that this matter was burned by the agents of the defendants a few days after the rain, as far as practicable; that the defendants had in the course of their business shipped train loads of Texas cattle by this station, and, before the eighteenth of June, two or three times a day; and that the defendants' road extended south as far as Denison, Texas, and other points in that state. The jury

returned a verdict for the plaintiff, from which the defendants have appealed; and they allege as error the admission of testimony over their objection, and the refusal of certain instructions requested, and the giving of others of the court's own motion.

We do not think that the exception of the defendants to the ruling of the court, permitting the plaintiff to testify as to defendants' shipments of Texas cattle, and course of business in that respect, is well taken. This evidence had a direct bearing on the question of whether or not plaintiff's cow was infected with Texas fever or other contagious disease, by reason of having come in contact with manure or other matter thrown out of cars which had been employed in transporting cattle from Texas. The evidence on this point was that, at the time of the occurrence sued for, there was a considerable rush of Texas cattle over the road, two and three train loads, and probably more, being hauled every day. This evidence, in connection with other circumstances, and the fact that plaintiff's cow and other cattle were seized with Texas fever, after having gone over or about the manure and other matter thrown out of defendants' cattle cars, had a direct bearing upon the question as to how the cow in suit was infected with the disease of which she died.

Nor is there any force in the point made by the defendants on the refusal by the court of certain instructions requested. These instructions were based on the theory that the dragging and kicking of straw and manure from the cars, into which the ties were being loaded by the men engaged in the work, was not a cleaning out of the cars in the statutory sense, and that, therefore, the defendant would not be liable, although plaintiff's cow died from coming in contact with matter so removed from defendants' cars.

The statute provides that the defendants shall not

between certain dates *unload or empty or clean out* any car or cars, in which cattle or other live stock have been confined or shipped, on any but lands inclosed by a lawful fence, etc., and it provides in the next section that the railroad company shall be liable in every case, where an animal belonging to another shall become diseased or die by reason of the non-compliance of such railroad company with the provisions of the first section. The purpose of the statute was to prevent the danger to animals from infection arising from the contagious matter thrown from the cars on uninclosed lands, where such animal would be likely to come in contact with it, and the language employed in the statute shows that this was the object had in view. It was not the object of the statute to prescribe *how* the unloading or emptying or cleaning out should be done, but to direct *where* it should not be done. The position of the appellants that, in order to constitute a cleaning out in the statutory sense, there must have been a thorough and complete cleaning and purification of all parts of the car, is not warranted either by the terms used, or the purposes had in view in the particular clause of the section under which this action was brought.

The appellants insist that the tie-loaders, in ejecting said matter to enable them to put the ties in the cars, were acting as the servants of the independent tie contractor and not of defendants; wherefore they are not liable for the emptying of the manure, etc., by said servants.

It must be borne in mind that the gist of the present action is the allegation of non-compliance by defendants with a *statutory duty* to plaintiff's damage. The rule in such cases is stated thus (2 Thompson on Negligence, p. 904, sec. 27): "The sound rule is that, where a statutory obligation is imposed upon a person, he is liable for any injury that arises to others in consequence

of its having been negligently performed; and this, whether it were performed by himself or by a contractor employed by him." See also Wharton on Negligence, sec. 443.

In the case at bar the expulsion of the infected matter at a forbidden locality was a clear violation of a statutory duty; nor would the defendants be relieved of responsibility, if the facts disclosed that the cars containing the infected matter were supplied by it for the reception of ties, which were to be put on them for the contract price it had agreed to pay the tie contractor, and that the loading of said ties by the servants of the tie contractor "reasonably and properly involved" the emptying out of the contents of the cars. This propo-. sition and its converse were contained in the instructions given by the court, and were the only issues as to liability for negligence which could have been given to the jury under the facts of this particular case, because, if the instructions had contained the element that the *necessary* effect of the loading of the cars must be to expel the matter, then there would have been no issue as to defendants' negligence to be put to the jury. The law is that any disobedience by a railroad company of a statute or an ordinance, prescribed for the safety of person or property, is negligence in itself *(Drain v. Railroad*, 10 Mo. App. 531, 535; *Norton v. Ittner*, 56 Mo. 351, 352), and there could of course be no difference in an act of disobedience by the company itself, and an act of disobedience by persons hired by it, where the doing of the thing for which they were hired *necessarily* involved the breach of the statute. To the extent that the loading of the cars required the emptying out of the infected matter, the tie contractor or his men so acting under the contract with defendants were the defendants' servants, in so far as to render the defendants liable for their acts in violation

of the statute forbidding the emptying of cars in that condition.

As to the point that the statute in question is penal and therefore to be construed strictly, the answer is that the statute in question is both penal and compensatory, and is brought before us in the latter character only, since the action herein is for compensation for injuries resulting from defendants' disobedience of a statutory duty, and not a prosecution for a misdemeanor. In such case "it is to be construed as any other statute." *Parish v. Railroad*, 63 Mo. 284, 287.

We have examined the instructions given by the learned judge on the trial, both at the instance of defendants and of his own motion, and we find that they were drawn so as to present all the issues arising under the evidence, and were not unfavorable to the defendants.

There being no error in the record, the judgment herein is affirmed. All the judges concur.

### SEPARATE OPINION.

BIGGS, J.—I agree to the result reached in Judge Bond's opinion, but I cannot concur in the treatment.

I think that the kicking of the excrement and straw from the car by the tie-loaders was under the circumstances an unloading of such matter within the meaning of the statute; for the reason that the loading of the ties into the car, in the condition in which it was furnished by the defendants, *necessarily* involved the ejection of such matter. Therefore the tie-loaders, although in the employ of the tie contractors, must as to such unloading be regarded as the servants of the defendants.

The court instructed the jury that, "If the loading of the ties into the cars in question *reasonably* and *properly* involved the ejection of a quantity of straw,

etc., from the cars," the defendants were liable. I am inclined to the opinion that the defendants could only be held, if the loading of the ties *necessarily* involved the ejection of the manure. But the defendants could not have been prejudiced by the misdirection, because the undisputed evidence showed that the straw and manure were allowed to accumulate in the car to the depth of about six inches. If the case were sent back for a new trial and the jury instructed according to my views, the finding would not likely be and ought not to be different. I, therefore, concur in the affirmance of the judgment.

There is another assignment of error that is not noticed in the opinion. The instructions of the court did not expressly but only inferentially require the jury to find that the matter thrown from the car was infected with the germs of Texas or Spanish fever. The defendants' second instruction expressly required this fact to be found in order to hold the defendants. This instruction supplied the omission, and cured the defect in plaintiff's instruction. Where the plaintiff's instructions manifestly imply what the defendants' instructions directly assert, there is no error. *Hohstadt v. Daggs*, 50 Mo. App. 240.

Judge ROMBAUER concurs in the views herein expressed.