JOHN BRADFORD, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 20, 1896.

1. **Railroads:** COMMUNICATING TEXAS FEVER: COMMON LAW: STATUTE. An action at common law against a railroad company for communicating Texas fever to plaintiff's stock will lie if the approximate cause of the injury complained of is a failure to comply with section 2669, Revised Statutes, 1889.

2. ———: AGENCY: INSTRUCTION. Where a railroad furnishes to a shipper of stock unclean cars which he necessarily must clean before using them, he in cleaning them becomes its agent. Instruction set out in the opinion, approved.

3. **Negligence:** PROXIMATE CAUSE. The proximate cause is such that the injury must be its natural and probable consequence, and as such might and ought to have been foreseen.

4. **Expert Evidence:** QUALIFICATION: JUDICIAL DISCRETION: REVIEW. Whether a witness offered as an expert possesses the proper qualification, is a question for the trial court whose decision is conclusive unless shown to have been erroneous.

5. ———: WHAT SUBJECT FOR. Where the fact calls for scientific or professional knowledge, or particular experience, or is one upon which men of common information are not capable of forming a judgment, it is a case for expert evidence.

*Appeal from the Cooper Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

AFFIRMED.

*George P. B. Jackson* for appellant.

(1) The court erred in permitting the witness, Nixon, to express his opinion in regard to Texas fever,

and the manner in which it is communicated. He was not qualified to speak as an expert. (2) The petition did not state a cause of action, because it did not show any act of the defendant to be the proximate cause of the alleged injury. (3) The demurrer to the plaintiff's evidence should have been sustained. (4) The plaintiff's instruction was erroneous, because it submitted questions to the jury without any evidence to warrant it. (5) The recovery was really founded on sections 2669 and 2670 of the Revised Statutes of 1889, although it is sought to conceal that theory by resorting to a form of allegation stating, as it is claimed, a common law liability. Under the statute, plaintiff was not entitled to recover. Under the common law, the defendant was not liable, because there was no causal connection between the act of defendant and the injury to plaintiff. *Stepp v. Railroad*, 85 Mo. 229; *Harlan v. Railroad*, 65 Mo. 221; *Powell v. Railroad*, 76 Mo. 80; *Mathiason v. Mayer*, 90 Mo. 585; *Hudson v. Railroad*, 101 Mo. 13–35; *Banks v. Railroad*, 40 Mo. App. 458.

*John R. Walker* for respondent.

(1) The court properly permitted the witness, Nixon, to express his opinion in regard to Texas fever. It has been held that a nonexpert witness may give an opinion as to the insanity of another. *Crowe v. Peters*, 63 Mo. 429; *Moore v. Moore*, 67 Mo. 192; *State v. Erb*, 74 Mo. 199; upon the question of testamentary capacity, *Appleby v. Brock*, 76 Mo. 314; and the speed of a running train, *Sullivan v. Railroad*, 97 Mo. 113; *Hanlon v. Railroad*, 104 Mo. 381. (2) It was the duty of the defendant to have thoroughly cleaned these cars before furnishing them to Schlotzhauer. R. S. 1889, sec. 2669. This being an action at common law, the defendant was guilty of negligence in failing to comply with a statutory

duty. *Boggs v. Railroad*, 18 Mo. App. 274; *Goodwin v. Railroad*, 75 Mo. 73. (3) The defendant having been guilty of negligence in the first place, in not thoroughly cleaning its cars, the intervening negligence of Schlotzhauer, in cleaning the cars, will not relieve the defendant, as it had reasonable cause to expect and apprehend that Schlotzhauer would so clean them. The cars when furnished were unfit, and Schlotzhauer was forced to clean them, as defendant must have known he would. *Pastene v. Adams*, 49 Cal. 87; *Griggs v. Fleckenstein*, 14 Minn. 62; *Lane v. Atlantic Works*, 111 Mass. 136; *Weick v. Lander*, 75 Ill. 93; *Binford v. Johnston*, 82 Ind. 426; *Henry v. Davis*, 93 Ind. 452. (4) "The rule in actions of tort (and, of course, in actions of negligence also), is that the tort feasor must make reparation for such losses consequential on his wrongful act, as might reasonably have been expected to ensue." *Brink v. Railroad*, 17 Mo. App. 177; *Boggs v. Railroad*, 18 Mo. App. 274; *Banks v. Railroad*, 40 Mo. App. 458; *State ex rel. v. Finn*, 87 Mo. 310; *Browning v. Railroad*, 124 Mo. 55; *Morrison v. Railroad*, 27 Mo. App. 418; *Pike v. Eddy*, 53 Mo. App. 505.

SMITH, P. J.—This is an action which was brought by the plaintiff against the defendant to recover the value of two milch cows, which, it is alleged, were killed. in consequence of the negligence of the defendant.

The evidence tended to prove that: Harriston is a small station on the defendant's railroad in Cooper county, and the railroad grounds thereat were unfenced, so that stock, running at large, could approach the stock pens. The plaintiff lived about a mile north of this station and owned two milch cows that ran at large, grazed on the open lands in the vicinity and sometimes on the railroad lands at Harriston. That sometime in the latter part of August, 1892, the defend-

ant company delivered at Harriston station two stock cars, ordered by John Schlotzhauer, to be used in the shipping of cattle. When these cars were delivered by defendant to him, at the station, they were in such a filthy condition as to be unfit for use without cleaning; these cars had been used for shipping cattle just prior to this time, and there remained in the cars the prairie hay which had been used for bedding, and this was dripping with the excrement and urine from the cattle theretofore shipped in the cars. Before he could ship his stock in them, he found it necessary to clean them out, by throwing the bedding and offal onto the defendant's right of way. At and prior to this time, the defendant was shipping Texas cattle from Texas to Chicago and St. Louis. Plaintiff's two cows, in grazing, came in contact with the matter so thrown out of these two cars, ate some of this prairie hay, and in a few days died of Texas fever.

Plaintiff had judgment in the lower court and the defendant appealed.

The defendant assigns as error the action of the trial court in refusing to declare to the jury, by an instruction requested by it, that the plaintiff was not entitled to recover.

Section 2669, Revised Statutes, makes it the duty of every railroad corporation in this state to thoroughly clean all its cars for the transportation of live stock, and to furnish all cars to the person or persons ordering the same at the point of shipment, thoroughly cleaned and in good condition for the transportation of live stock to be shipped. It is further provided in the same section, that it shall be unlawful for any railroad, or any agent, servant, or employee thereof, to unload, between the first day of June and the first day of November of each year, or empty or clean out any car or cars in which any cattle, horses, mules, sheep, or

other live stock have been confined, or shipped, on any but land inclosed by a lawful fence, etc. Although the plaintiff's action is at common law, yet he was entitled to recover in this form of action, if the proximate cause of the injury complained of was the failure of the defendant to comply with the duty enjoined upon it by the statute just referred to. *Goodwin v. Railroad*, 75 Mo. 73; *Braxton v. Railroad*, 77 Mo. 234; *Minter v. Railroad*, 82 Mo. 128; *Boggs v. Railroad*, 18 Mo. App. 274. If the defendant, by its agents, servants, or employees, cleaned out the cars which were for the use of Schlotzhauer, for shipping his cattle, and in which cattle had been shipped, on lands not inclosed by a lawful fence, and in consequence thereof. the plaintiff's cows became infected with Texas fever, from which they died, then unquestionably the plaintiff ought to recover.

But it is insisted that even though the cars were cleaned out on lands not inclosed by a lawful fence, and that in consequence thereof plaintiff's cows contracted the Texas fever, from which they died, yet the defendant is not liable, for the reason that Schlotzhauer was not an agent, servant, or employee of the defendant, at the time he cleaned the cars. It therefore becomes material to inquire into the exact legal relation subsisting between defendant and Schlotzhauer as to the plaintiff, a third party.

The case of *Railway v. Keghron*, 74 Pa. St. 316, was where two tank cars were placed by the railroad company upon its track, at the Union Petroleum Company's place of business, to enable the latter's superintendent to there fill them with oil. The cars were put in the superintendent's charge for that purpose; while loading the cars, they were in the exclusive charge of the superintendent. None of the railway's employees were left in charge or control of them. It became

necessary to move the front car in order to get the other one sufficiently near to the tank to connect with a pipe, so that the oil could flow into the top of the car. In moving the front car, it became unmanageble and ran into a locomotive standing on the track. The collision caused the car, locomotive, one or two other cars, and the plaintiff's house, to burn. In the course of the opinion, the court said: "The cars, however, were, at the time of the injury, subject to the control and management of Hines (the superintendent of the oil company), for the purposes aforesaid. His authority was general within the limits of the special purpose. That purpose was to fill the cars with oil; that was the general object for which the cars were intrusted to him. It was within the general scope of his powers so to use and move the cars as to facilitate the loading thereof. As to third persons, he was clearly the agent of the railway company and it is liable for his acts."

In a Massachusetts case, *Kimball v. Cushman*, 103 Mass. 194, the owner of a carriage and horses was held liable for the negligent driving of a brother-in-law, to whom they were intrusted, the brother-in-law being at the time of the collision engaged in the owner's business, though not specially engaged as servant, or receiving compensation. Even a volunteer's negligence may be imputed to the master, when the master or his authorized representative accepts the services of the volunteer, or permits him to act: *Hill v. Morey*, 26 Vt. 174.

*Pike v. Eddy*, 53 Mo. App. 505, was an action to recover the value of a cow alleged to have died of Texas fever, communicated by the matter cleaned from the defendant's cars in violation of section 2669, Revised Statutes, *ante*. It appears from the statement of the case that defendant set out some cattle cars at a station to be loaded with cross ties. Refuse matter, prairie

hay, etc., had accumulated on the floor of the cars, to
the depth of several inches, incident to their use in
carrying cattle.   The tie loaders, in order to facilitate
the loading of the cars, cleaned out the same, by throw-
ing the accumulations upon land uninclosed, thirty or
forty feet from the station and near a public road.   The
plaintiff's cow, which passed over the heap of mat-
ter shortly after it had been thrown from the cars, died
with the Texas fever.   In deciding the case, it was said
by the court: "That the kicking of the excrement and
straw from the car by the tie loaders was, under the
circumstances, an unloading of such matter within the
meaning of the statute, for the reason that the loading
of the ties into the car, in the condition in which it
was furnished by the defendant, necessarily involved
the ejection of such matter.   Therefore the tie loaders,
although in the employ of the contractors, must be, as
to such loading, regarded as the servants of the defend-
ant.

It seems to us that according to the principles
announced in these cases, Schlotzhauer, under the cir-
cumstances which the evidence tends to show in the
present case, acted as the servant of defendant, as to
the plaintiff, in cleaning the defendant's cars standing
on land where it was by statute unlawful for it to be
done.   If the loading of the cars with the cattle by
Schlotzhauer in the condition which they were fur-
nished by defendant necessarily involved the cleaning
therefrom of the hay, excrement, etc., then such clean-
ing was within the meaning of the statute.   The act of
Schlotzhauer in cleaning the defendant's cars was that
of the defendant, for the former, as to plaintiff, must
be regarded as the agent of the latter, and for whose
unlawful act the latter is liable.   There is abundant
evidence to entitle the plaintiff on this theory to go to
the jury.

VOL. 64 app—31

The plaintiff's instruction informing the jury that, "it was defendant's duty to clean its cars before furnishing same for use by shippers, and if they believe from the evidence that the defendant furnished cars at Harriston, in or about the month of August, 1892, for the shipment of stock therein, and that the bedding for and excrement of cattle previously shipped therein were left in said cars and that it was necessary for the shipper to clean said cars before using them; and that the natural and probable consequence of defendant having furnished unclean cars was that said excrement and bedding would be thrown out of said cars and that defendant's agents and servants ought to have anticipated this result when they furnished said cars, and that cattle would probably come in contact therewith, and that said excrement and bedding were thrown from said cars beside the track, in cleaning the same, and that the plaintiff's cows came in contact therewith and thereby contracted Texas fever, from the effects of which they died, then the jury will find the issues for the plaintiff," we think correctly declared the law of the case.

It is plain that upon the theory that Schlotzhauer was the servant of the defendant, as to the plaintiff, in cleaning the cars, the objection urged by the defendant that there is no causal connection between the negligence of the defendant and the injury to plaintiff, is not well taken.    In *Banks v. Railroad*, 40 Mo. App. 458, it was declared by us that in determining what is the proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence,—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act.    Applying this rule to the facts disclosed by the evidence, and the causal connection between the

negligence and the injury at once becomes apparent. It is clear from the surrounding circumstances that the defendant might, or ought to, have foreseen that the excrement, hay, etc., thrown out of the cars onto the uninclosed land, was calculated to and would attract cattle thereto, running at large on the common in that vicinity, and to communicate to them the Texas fever infection.

The defendant further contends that the trial court erred in permitting the witness, Nixon, to express his opinion in regard to the Texas fever and the manner in which it is communicated. Whether a witness offered as an expert possesses the proper qualifications, is always a preliminary question for the trial court, whose decision is conclusive, unless it appears from the evidence to have been erroneous, or founded upon an error of law. *Hartman v. Muelbach* (decided at present term). The witness testified that he had been in the cattle business for thirty years; that a number of his cattle had died of Texas fever, and in that way he had become familiar with the disease and could recognize at once cattle infected with it. He further testified that he was familiar with the way Texas fever was communicated to cattle; that he had read everything on the subject accessible to him, including Dr. Paquin, state veterinarian; American Encyclopedia; Reports of the Bureau of Animal Industry at Washington, etc.

An expert may give his opinion on a subject of science or skill, or one of which observation or experience has given him an opportunity and means of knowledge. When there is a fact in a case which calls for scientific or professional knowledge, or any particular knowledge or experience, or if it be one upon which men of common information are not capable of forming a judgment, it is a case for expert evidence. *Hartman v. Muelbach*, *ante*, and cases there cited. Accord-

ingly, we think the witness was qualified to testify his opinion, leaving it to the jury to determine the value and weight of such opinion.

The petition, we think, stated every essential fact necessary to constitute a cause of action, and such facts were sufficiently proved to justify the verdict.

The judgment must be affirmed.   All concur.