LONGAN v. WELTMER et al., Appellants.

Division Two, March 1, 1904.

1. **NEGLIGENCE: Unskillful Treatment of Sick: Magnetic Healing: Necessary Proof.** In a suit for damages for injuries due to the unskillful treatment by magnetic healers who "held themselves out as magnetic healers, claiming and pretending to heal all mental and physical ailments and diseases of the human body through some power peculiar to themselves which they possessed," it is not necessary for the injured party to show that the kind and manner of treatment was not proper or usual in magnetic healing. Such a suit is not against them as physicians, but upon a contract, for the negligent or unskillful per-

formance of which, by the "healers" or their employees, the "healers" are liable just as they would be for the negligent performance of any other contract.

2. ———: ———: Who are Liable. Any person who is legally responsible for his conduct is liable for all damages suffered by another which are the proximate result of negligence, carelessness or want of ordinary care; and the reasons which prevail in such cases are much more cogent if the negligent person deals with life or health instead of property.

3. ———: ———: Magnetic Healing: Competent Witnesses. A physician who does not pretend to know anything about the practice of magnetic healing is competent, from education and experience, to testify whether the treatment which the complaining party underwent was proper. Simply because a person pretends to possess certain powers of healing peculiar to himself, is no reason why persons of education and practice who do not claim those powers are not competent to judge whether the treatment administered was negligently and carelessly done.

4. ———: ———: ———: Excessive Award: Passion and Prejudice. It is only when the verdict is so excessively large and so out of line with reason and justice as to shock the conscience and to satisfy the unbiased mind that it is not the result of fair and unprejudiced deliberation, that the appellate court will say that the damages awarded by the jury were excessive and the result of prejudice, passion and bias.

5. ———: Damages: Instruction: Roving Commission: Practice. An instruction on the measure of damages not erroneous in its general scope, but subject to criticism on the ground that it is too general and indefinite, will be approved unless defendant asks an instruction on the same subject restricting the plaintiff's right to recover to more limited bounds.

6. EVIDENCE: Hypothetical Question: General Objection. An objection to a hypothetical question that "it is not a proper hypothetical question," is entirely too general, and amounts to no objection at all. The reason for its not being proper should be stated at the time.

Appeal from Henry Circuit Court. — *Hon. W. W. Graves,* Judge.

AFFIRMED.

*Harkless, O'Grady & Crysler* for appellants.

(1)   Instruction 4, given at the instance of the plaintiff upon the measure of damages, was clearly erroneous.   Goss v. Railroad, 50 Mo. 614; McGowan v. Ore & Steel Co., 109 Mo. 518; Carpenter v. McDavitt, 53 Mo. App. 403.   (2)   Instructions which assume disputed facts are erroneous.   Linn v. Massilon, 78 Mo. App. 116; Robertson v. Drane, 100 Mo. 273.   (3)   Plaintiff's instruction to the effect that it was the duty of Krewsom to treat the defendant with ordinary skill, and such "as an ordinary skillful man would have used," was clearly erroneous.   Van Hooser v. Berghoff, 90 Mo. 487.   (4)   The hypothetical questions to the physicians were erroneous.   State v. Meyers, 99 Mo. 121; 1 Green. Ev., sec. 440, p. 531.

*H. H. Blanton, C. G. Burton* and *W. E. Owen* for respondent.

(1) Instruction 4 given for plaintiff on the measure of damages is proper.   Young v. Webb City, 150 Mo. 338; Browning v. Railroad, 124 Mo. 71; Haymaker & Crukshanks v. Adams & Son, 61 Mo. App. 585; Wheeler v. Bowles, 163 Mo. 398.   (2)   Instruction 2 on the part of plaintiff is more favorable to defendants than the requirement of the law.   14 Am. and Eng. Ency. Law (1 Ed.), pp. 76, 77, 78, 79; Musser v. Chase, 29 Ohio St. 577; Ruddock v. Lowe, 4 F. & F. (Eng.) 519; Nelson v. Harrington, 72 Wis. 591; Higgins v. McCabe, 126 Mass. 13.   The instruction calls for the least degree of care and skill on the part of defendants' agents and servant. (3)   The court properly permitted the hypothetical questions to the physicians to be asked and answered: First, because the objections thereto were not sufficiently specific.   State v. Young, 153 Mo. 445; Rosenheim v. Ins. Co., 33 Mo. 230; State v. Wright, 134 Mo. 417; State v. Yandle, 166 Mo. 589; Howland v. Railroad,

110 Cal. 513; Crocker v. Carpenter, 98 Cal. 421. Second, because the questions do assume and state the material facts which the testimony of plaintiff tended to prove. Underhill on Evidence (Ed. 1894), sec. 188, pp. 272-273; Russ v. Railroad, 112 Mo. 45; Fullerton v. Fordyce, 144 Mo. 531. Third, because said questions do not, as assumed by appellants, call for an opinion on the ultimate facts to be found by the jury. Commonwealth v. Mullins, 2 Allen 295; Luning v. State, 2 Pinney (Wis.), 215; Hunt v. Lowell Gas Light Co., 8 Allen 169, 85 Am. Dec. 697. Fourth, because, even though we concede, for the sake of the argument, that the objection is sufficiently specific, and that the questions do call for opinions on the ultimate facts to be found by the jury, still, such an objection is not valid. Benjamin v. Railroad, 133 Mo. 289; 12 Am. and Eng. Ency. Law (2 Ed.), p. 424; Transportation Line v. Hope, 95 U. S. 297; Railroad v. Myers, 63 Fed. 793; Van Wycklen v. Brooklyn, 118 N. Y. 429; Fox v. Buffalo Park, 21 N. Y. App. Div. 321; Johnson v. Moffett, 19 Mo. App. 161; Johnson v. Railroad, 96 Mo. 340; Bronson v. Turner, 77 Mo. 489; State v. Meyers, 99 Mo. 122; Thompson v. Ish, 99 Mo. 160; Goss v. Railroad, 50 Mo. App. 614; Woolwine v. Bick, 39 Mo. App. 495; Riley v. Sparks Bros., 52 Mo. App. 572; Eyerman v. Shenan, 52 Mo. 221; State v. Foster, 136 Mo. 653; Hicks v. Railroad, 124 Mo. 115; Powers v. Kansas City, 56 Mo. App. 573; Cook v. Railroad, 57 Mo. App. 471.      (4)   The damages are not excessive.   Perrette v. Kansas City, 162 Mo. 238.

BURGESS, J.—This is an action for damages for injuries alleged to have been sustained by plaintiff by reason of the negligent, careless and unskillful treatment by one of the employees of defendant "magnetic healers," under whose treatment she was at the time for some derangement of the stomach.

The suit was brought in the circuit court of Vernon county, but thereafter on the application of plain-

tiff the venue was changed to the circuit court of Henry county, where upon a trial before the court and a jury, plaintiff recovered a verdict and judgment in the sum of seven thousand five hundred dollars, from which defendants, after unavailing motion for a new trial, appeal.

The salient facts of the case are about as fcllows:

In January, 1899, plaintiff had malarial fever, in consequence of which she was confined to her bed for about eight weeks. About the 10th of March next thereafter, as she had not recovered from the effects of the fever, Dr. Henry Evans, of Sedalia, where she then was, was called to attend and treat her. She at that time was in a very weak and debilitated condition; had some stomach trouble. She remained at Sedalia, under the care and treatment of Dr. Henry Evans, until May 1st, when he advised her to go to Eldorado Springs, for her health. She went to Eldorado Springs and remained there for about three weeks and returned to Sedalia, where she remained under the care of Dr. Evans until the middle or latter part of June, 1899. She went to Eldorado Springs again about the 15th or 20th of June and remained there about one week. About July 1st she went to Nevada, Missouri, to be treated for stomach trouble at the institution kept and maintained by the defendants.

On her arrival at defendants' institution she was directed to one Mallott, an employee of defendants called the diagnostician of their institution, for diagnosis of her case. Mallott diagnosed her case and assigned her to A. L. Krewsom for treatment. Krewsom gave plaintiff a treatment each day for about one week, when she went again to Eldorado Springs, where she remained about one week and returned to Nevada and took treatments from Krewsom at said institution until August 13, 1899, when she took her last treatment from him.

On the 13th day of August, 1899, A. L. Krewsom,

while treating plaintiff at defendants' institution, placed her on her back on a padded table, and put one hand on her stomach and the other hand under her knees, and bent her so that her knees almost touched her breast. He then placed her on her stomach on the padded table, and put his left hand on the small of her back over her spine and his right hand under her knees and bent her legs up until she screamed with pain.

These manipulations resulted in the following injuries: The ligaments connecting the back bone and hip bone were ruptured and torn; and the back and spine and pelvic organs were permanently injured. No one was present at the time these injuries were inflicted excepting plaintiff and Mr. Krewsom, he having a few days prior thereto directed plaintiff's sister, who had been accompanying her to defendants' institution, to remain away, stating that the presence of a third person would probably prevent plaintiff taking the suggestions.

From the moment of Mr. Krewsom's manipulations of plaintiff she suffered intensely and almost constantly for a number of weeks, with pains in the lower part of the back and through the hips, and finally her condition, on account of the injuries so inflicted, became such that it was necessary for her physician, Dr. Ammerman, to place her in a plaster of paris brace.

Four days after she was injured by Krewsom she employed Dr. I. W. Ammerman, of Nevada, Missouri, to treat her, and on that day he made a cursory examination. Two or three days afterwards he made a thorough examination and found her in the condition above described. On September 6, 1899, Drs. Priest and Buchanan, of Nevada, in connection with Dr. Ammerman, made an examination of plaintiff, and on the 14th and 16th of September, 1899, Drs. Halley and Fulton, of Kansas City, Missouri, respectively, examined her while confined to her bed in Nevada, with the results above set forth.

During the trial of the case all of the above phy-

sicians, as well as Drs. Evans, of Sedalia, and Gibbons and Shankland, of Clinton, made a thorough examination of plaintiff and each of them testified to her injuries as above described and that said injuries were permanent, and a majority of them testified that her life would be shortened thereby.

Plaintiff also read in evidence the deposition of Krewsom wherein he admits that he manipulated plaintiff in the manner described by her, and at one time she complained that he hurt her.

Defendants did not offer any testimony as to the nature and extent of plaintiff's injuries, but introduced certain witnesses, residents of Nevada, who testified that they saw plaintiff indulge in certain calisthenic exercises, and to having gone buggy riding with Dr. Ammerman on several occasions after the time of the alleged injuries, and other evidence which tended to show that she had sustained no injury by reason of her treatment by Krewsom.

Over the objection and exception of defendants the court instructed the jury as follows:

"1. The court instructs the jury that the defendants admit that at the time of the alleged injury to plaintiff they were copartners.

"2. The courts instructs the jury that if you shall believe from the evidence that A. L. Krewsom was the agent, servant, or employee of defendants, and that as such agent, servant or employee said A. L. Krewsom rendered treatment to plaintiff, then it was his duty to treat her with ordinary care and skill, and if you shall believe from the evidence that while he was treating her as the agent, servant or employee of defendants, he violently bruised, bent, twisted or wrenched plaintiff's back or spine, and that such treatment was improper and not such as an ordinary, careful and skillful man would have given the plaintiff under the circumstances, you will find that defendants' treatment of the

plaintiff by said A. L. Krewsom as their agent, servant and employee was careless, negligent and unskillful.

"3. The court instructs the jury that if you shall believe from the evidence that A. L. Krewsom, as the agent, servant and employee of the defendants, did carelessly, negligently and unskillfully treat plaintiff as defined in the previous instructions, and that by such treatment he did hurt, bruise and injure plaintiff in and upon her back, spine or pelvic organs, your verdict must be for the plaintiff.

"4. The court instructs the jury that if from the evidence they find for the plaintiff, then in estimating her damages they will take into consideration the physical injury inflicted, if any, whether temporary or permanent, and the bodily pain and mental anguish endured, if any, by the plaintiff by reason of such injury, if any, and in assessing her damages you shall assess them at such a sum as you shall believe from the evidence will reasonably compensate her for said injury received, together with the suffering caused by reason of said injury, together with such reasonable sum as you shall believe from the evidence she has paid out or has become liable for on account of medical attention and treatment for said injury, not to exceed in the aggregate $50,000, as prayed for in plaintiff's petition.

"5. The court instructs the jury that under the law the plaintiff is not liable for any medical services rendered her by Drs. Halley, and Fulton and Evans, and in case you find for the plaintiff in assessing damages you will not allow the plaintiff anything for such medical services."

The court at the instance of the defendants gave to the jury the following instructions numbered 2, 3 and 5, as follows, to-wit:

"2. The court instructs the jury that although you may believe and find from the testimony that Mrs. Longan, the plaintiff, has received and suffered an injury

to her back, yet, unless you can further find from a greater weight of the testimony that said injury was produced by treatment received from A. L. Krewsom, on or about the 12th day of August, 1899, your verdict should be for the defendant.

"3. The opinion of experts who have testified in this cause is testimony which the jury should consider and examine in connection with all the other testimony in this case, subject to the same rules of credit and disbelief as the testimony of other witnesses.

"5. The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony; and in determining such credibility and weight they will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relation to or feeling toward the parties, the probabilities or improbabilities of his statements, as well as all the facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly and willfully sworn falsely to any material fact that you are at liberty to reject all or any portion of such witness's testimony."

The defendants asked the court to give instructions 1, 4, 8, and 9, which were refused, and they excepted.

"1. The court instructs the jury that if you find from the testimony that a person receiving the injury to their back such as claimed by the plaintiff to have been received at the hands of A. L. Krewsom, an employee of the defendants, would suffer great pain immediately following such injury and that such pain would be severe and continuous thereafter, and you further find from the testimony that after August 12, 1899, to and during the first few days in September thereafter she did not suffer or complain of pain in her back, then your verdict must be for the defendant.

"4.   The court instructs the jury that the burden of proof in this case is on the plaintiff to prove her case by a preponderance of the  evidence and unless you find and believe from a preponderance of the evidence that plaintiff has  sustained  the  injuries  complained of and that she received such injuries at the hands of A. L. Krewsom, you will find for defendants.

"5.   The  court  instructs  the  jury  that  before they can find for the plaintiff in this case, they must find and believe from a preponderance of the evidence that plaintiff has sustained the injuries complained of in her petition, and said injuries were sustained at the hands of said A. L. Krewsom.

"6.   The  court  instructs  the  jury  that  although you may find from the testimony that the plaintiff has received and sustained an injury to her back,  before you can find a verdict for the plaintiff you must further find from a preponderance of the testimony that said injury was caused by A. L. Krewsom on or about the 12th day of August, 1899; although you may not be able from the testimony to find what caused said injury."

The court refused to give said instructions numbered 1 and 4, but modified the same, and gave them as modified, which said instructions as modified by the court are as follows:

"1.   The court instructs the jury that if you find from the testimony that a person receiving the injury to their back such as claimed by the plaintiff to have been received at the hands of A. L. Krewsom, an employee of the defendants, would suffer great pain immediately following such injury, and that such pain would be severe and continuous thereafter, and you further find from the testimony that after August 12th, 1899, to and during the first few days of September thereafter she did not suffer or complain of pain in her back; then this is a fact which you  should  take into

consideration in determining the fact whether or not the injury claimed to have been received by plaintiff was received at the time, in the manner and by the means as claimed by her.

"4.   The court instructs the jury that the burden of proof in this case is on the plaintiff to prove her case by a preponderance of the evidence, and unless you find and believe from a preponderance of the evidence that plaintiff has sustained the injuries complained of, and that she received such injuries at the hands of A. L. Krewsom, you will find for the defendants.   By preponderance of evidence, as in this and other instructions herein used, is not meant the greater number of witnesses, but the greater weight and credibility of all the evidence and facts and circumstances in evidence."

Defendants contend that as plaintiff's action is based solely upon the negligent treatment of her, in order to constitute unskillfulness it devolved upon her to show that the kind and manner of treatment adopted was not proper or usual in magnetic healing, and that as she failed to do so, she was not entitled to recover. If this action was being prosecuted upon the theory that defendants were physicians or that magnetic healing was one of the recognized professions there would be more force in this position, but it is not, but upon the ground that they held themselves out as magnetic healers, claiming and pretending to heal and cure all mental and physical ailments and diseases of the human mind and body through some power which they possessed peculiar to themselves.   Nor was it necessary in order to their liability for injuries sustained by plaintiff that they should have been or claimed to be practicing physicians, but if they undertook to cure plaintiff of her maladies, and, by the negligent or unskillful treatment of her, either by themselves or their employees, and by reason of such treatment she sustained the injuries sued for, she was  entitled to re-

cover just the same as she would be entitled to recover damages for the negligent or unskillful performance of any other kind of contract.

It is a legal truism that any person who is legally responsible for his conduct is liable for all damages suffered by another which are the proximate result of negligence, carelessness or want of ordinary care; and the reasons which prevail in such cases, are much more cogent in the case of a person who deals with health and life instead of property.

In the case of Nelson v. Harrington, 72 Wis. 591, it is said:

"One who holds himself out as a healer of diseases, and accepts employment as such, must be held to the duty of reasonable skill in the exercise of his vocation. Failing in this, he must be held liable for any damages proximately caused by unskillful treatment of his patient. This is simply applying the rule of liability to which all persons are subject who hold themselves out, and accept employment, as experts in any profession, art, or trade. The theory upon which an expert practices his profession, art, or trade, the sources from whence he derived his knowledge of it, the tools and appliances he employs in the exercise of his calling, his methods of work, are not controlling considerations. The courts pass no judgment upon these matters. They look only to results. Thus, a person may rely entirely upon his genius or normal intuitions for some line of mechanical work, and hold himself out as an expert, and accept employment therein, without previous training or practice. The law holds him responsible if he does his work unskillfully, although he does the best he can. He takes the risk of the quality or accuracy of his genius or intuitions. On the same principle one who holds himself out as a medical expert, and accepts employment as a healer of disease, but who relies exclusively for diagnosis and remedies upon some occult influence exerted

upon him, or some mental intuition received by him when in an abnormal condition, in like manner takes the risk of the quality or accuracy of such influence or intuition. If these move him so imperfectly or inaccurately that, although he pursues the course of treatment thus pointed out or indicated to him, he fails. to treat the patient with reasonable skill, he is liable for the consequences. The only' difference in the two cases is, the mechanic acts under normal, and the physician acts under abnormal, influence or intuitions. The law does not concern itself with the quality of the mechanic's genius, or with the reality or nature of such alleged occult influence or intuition which controls the physician in his treatment of his patient. It only takes cognizance of the question, Did the practitioner or expert render the service he undertook in a reasonably skillful manner? That question, as applied to the defendant, the jury upon sufficient proofs, have answered in the negative.''

While it is true that the physicians who testified on the part of plaintiff did not claim or pretend to know anything about the practice of magnetic healing, they were nevertheless competent from education and experience to testify whether the treatment which plaintiff underwent was proper, in any case, and especially in her condition.

Simply because a person claims or pretends to possess certain powers of healing peculiar to himself, is no reason why other persons who do not claim such powers are not, from education and practice, competent to judge whether the treatment administered was negligently or carelessly done. Otherwise, any nonprofessional person might undertake to treat a certain disorder, and if defendant's position be correct in law, it would not matter how carelessly or negligently that treatment were performed by such person, for if no one could be found of the same pretensions to testify with.

respect to such treatment, the injured person would be without remedy.

The contention is we think untenable.

It is said that the damages awarded by the jury were excessive, and the result of prejudice, passion and bias. There seems to be no way by which it can be proven that in making a large verdict the jurors were controlled by improper influences, and therefore it can only be inferred when the verdict is so out of line with reason and justice as to shock the conscience and to satisfy the unbiased mind that it is not the result of fair and unprejudiced consideration.

To justify such an inference, the fact in evidence ought not to justify any other conclusion. [Hollenbeck v. Railroad, 141 Mo. 97; Perrette v. Kansas City, 162 Mo. 238.] There is nothing disclosed by the record in this case which would justify us in holding that the verdict was not the result of fair and unbiased deliberation.

Defendants argue that instruction number four given for plaintiff is erroneous and to it is to be attributed the excessiveness of the verdict. This instruction is criticised upon the ground that it is so general and indefinite as to leave the jury a roving commission to do absolutely as they pleased in reference to the damages. No instructions were asked by defendants on the measure of damages. It requires but a casual reading of this instruction to show that it is not in accord with the rule announced in the case of Carpenter v. McDavitt & Cottingham, 53 Mo. App. 393, and kindred cases, but that case was overruled by the same court in the case of Haymaker & Crookshanks v. Adams & Son, 61 Mo. App. 581, and all other cases announcing the same rule were in effect overruled by the case of Browning v. Railroad, 124 Mo. 55, in which it is said:

"The defendant asked no instruction on the measure of damages whatever. No attempt was made by

it to point out the proper elements of damages in such cases or to modify the general language of the instruction. The instruction is not erroneous in its general scope; and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations, in an instruction embodying its views. The court is not required in a civil case to instruct on all questions, whether suggested or not, and as there is nothing in the amount of the verdict to indicate that the jury were actuated by any improper motive in their assessment, the general nature of the instruction is no ground for reversal.''

The instruction is good as far as it goes, and if defendants desired to restrict plaintiff's right to recover to more limited bounds than were covered by the instruction they should have asked an instruction to that effect. [Robertson v. Railroad, 152 Mo. 382; Harmon v. Donohoe, 153 Mo. 263; Matthews v. Railroad, 142 Mo. 645.]

Wheeler v. Bowles, 163 Mo. 398, was an action for damages alleged to have been sustained by the malpractice of defendant who was a physician, and Browning v. Railroad, supra, with respect to the subject-matter now under consideration was followed with approval.

It is also insisted that this instruction is vicious in that it assumed the existence of facts disputed in saying that ''together with the suffering caused by reason of said injury, together with such reasonable sum,'' etc., but it will be observed that before the use of the words complained of and in the same instruction there was submitted to the jury the same question in these words, ''and the bodily pain and mental anguish endured, if any, by the plaintiff by reason of such injury, if any,'' and it was wholly unnecessary to again add, the words ''if any'' after the words ''together with the suffering caused by reason of said injury.'' It can not in fairness, we think, be said that the in-

struction is erroneous upon the ground urged against it, or that it was misleading in its character.

A number of physicians were introduced as experts on behalf of plaintiff and among them Dr. Halley of Kansas City. He testified as follows:

"Q. Where did you meet her? A. Nevada, Missouri.

"Q. State to the jury whether or not you made an examination of that lady on the 14th of September, 1899, and if so, what you found as a result of your examination? A. I examined her in Nevada and found some bruises, some contusions on her back down near the hips, extending up from the hips over the small of the back, some marks, the effusion of blood underneath the skin and into the tissues close down over the median line; there was a small black spot still, the result of blood effused under the skin and into the tissues underneath. I found that part of the back very painful to pressure, also that she manifested pain on bending the body, bending the limbs forward or backward; that on making a pressure over the discolored parts I found her suffering with pains in the knees and ankles and wrists and shoulders. She had some uterine trouble as well, but these were the principal things she complained of when I examined her.

"Q. Describe to the jury, if you will, what peculiar parts of the back were injured? A. Well, it was the lower part of the small of the back and the upper part of the hips, extending from about the middle line of the hips up to the middle or small of the back, and spots were perhaps five inches in length and two or two and one-half inches in width.

"Q. How are the hip bone and back bone or sacrum there joined together? A. They are joined by a tough, dense and tolerably hard substance called fibro cartilage; it is the fibrous tissue with cartilage cells in it, which makes it very stiff and very strong.

"Q.   State to the jury if you know whether or not those ligaments or that cartilage were in any way affected by this injury?   A.   On the left side the attachment of the sacrum to the hip bone was probably torn and the vertebrae or ligament of the vertebrae was also torn.

"Q.   The back bone?   A. That is, the lower spine between the first or second and third lumbar vertebrae were evidently injured. .

. "Q.   State to the jury in what way the rupture or tearing of those ligaments would make itself manifest on the surface?   A.   By black and blue places and by the effusion of blood, the blood being extravisated.

"Q.   Extravisated means thrown out toward the surface?   A.   Yes, sir; the blood vessels were torn and the bleeding was into the tissues.

"Q.   State whether or not you have since that time examined this lady, and if so, when and where.   A. I examined her this morning there at the hotel.

"Q.   Well, state to the jury what you found with reference to injuries now on her  back, or spine?   A. Well, I find that she is still suffering pain over the part where the black spot was when I examined her last September; that is, at the point where the hip bone joins the sacrum on the left side.

"Q.   That is, the back bone, the sacrum is ——? A.   A part of the back bone, yes, sir.

"Q.   Doctor, I will ask you this hypothetical question.   Suppose that a lady 25 or 26 years of  age has suffered a spell of malaria fever in Porto Rico of about two months duration in which she was confined to her bed during that time, returned to this State in a weak debilitated condition incident to that fever, and is suffering from some derangement of the stomach in consequence of the fever, should be placed upon a padded table on her back and a man should place his left hand over her stomach and his right hand or arms under her limbs or knees, and should bend her forward so that the

knees should almost touch the breast, and should then turn the lady over on her face on this padded table, and place his left hand on the small of her back over her spine and his right hand under her knees and violently bend the limbs and body upward, the lady never having suffered any injury to the back or spine or any complaints whatever with her back previous to the placing on the table as I have explained, and that afterwards there should be injuries to the spine and back bone, and to the ligaments and cartilage connecting the hip bone and back bone, what would you say had produced those injuries?

"Defendants object to the question for the reason it is incompetent and not a proper hypothetical question, and not founded on the testimony.

"Objection overruled and an exception taken.

"A. I would say it was caused by the manipulations.

"Q. I will ask you to state to the jury whether or not, assuming the facts as I have stated them in the hypothetical question which I have just asked you, a treatment of that character for the debilitated condition of the stomach and derangement of the stomach or any womb trouble, would be the proper treatment? A. Such manipulations could have no beneficial effect in a remedial way in treating any of the diseased conditions that have been enumerated.

"Q. That could have no beneficial effect, what other sort of an effect would it have, if any; I am asking you whether or not that was proper treatment in your opinion? A. No, it was certainly not, for all medical treatment or manipulations are supposed at least to be for the benefit of the individual, and for the purpose of effecting a cure, and this could not benefit an individual suffering with the conditions that have been enumerated.

"Q. Doctor, from the examination that you have

made of this lady state what, in your opinion, will be the effect of these injuries on her health? A. I think it will give her a weak back, a painful back for the rest of her life; it is a year since I examined her, or nearly so, and she is still suffering with pain in that part of the back, and the repair of it should have been effected within a year, should have been so complete that if she was going to be entirely cured it would have been effected already.

"Q. Doctor, state in your opinion what will be the result of these injuries on this lady's life as to duration of life. A. I do not think that it will materially affect her life."

The hypothetical questions submitted to the experts were practically the same, varying only in phraseology, but defendants insist that error was committed in allowing them to be answered over their objections, and many suggestions are presented by this appeal why the judgment should be reversed for those reasons, but most of them are too technical to merit consideration. The plaintiff had the right to predicate a hypothetical question upon her own testimony, and in so far as Dr. Halley is concerned the question propounded to him was in accordance therewith, in so far as the injury to the back was concerned.

It is not so, however, with respect to hypothetical questions propounded to other experts, but it does not appear from the record that there was any objection to any of these questions except the general one, to-wit, "for the reason it is not a proper hypothetical question," but this was entirely too general, and amounted to no objection at all. It has always been held by this court that when an objection is made at the trial to the admission of evidence, the reason for the objection must be stated. [Rosenheim v. American Insurance Co., 33 Mo. 230; State v. Young, 153 Mo. 445; State v. Wright, 134 Mo. 417; State v. Yandle, 166 Mo. 589.]

In the case of Howland v. Railroad, 110 Cal. 513, it was held, that an objection to a hypothetical question asked of a physician in the general form "that it is irrelevant, immaterial and incompetent, and not a proper hypothetical question" is insufficient to call the court's attention to any particular objection to it. As was said in that case the defendants "should have pointed out the particular defect which rendered the question either incompetent, irrelevant or immaterial, or wherein it was not a proper hypothetical question, that the objection could have been intelligently ruled upon, and, if necessary or proper, obviated." [See; also, Crocker v. Carpenter, 98 Cal. 421.] If the objection to the question had been pointed out it is probable that it could have been obviated, and in fairness to plaintiff she should have been afforded an opportunity of doing so, had she so desired, and, if it was necessary.

It is also insisted that the hypothetical questions were all improper for the reason that the experts were permitted by them to tell the jury that in their opinions the particular treatment produced the injury, thus usurping the province of the jury, whose duty it was to pass upon that question. But this objection can not be considered by this court for the reason before indicated in regard to the generality of the objection to its admission.

Finding no reversible error in the record, we affirm the judgment.     All concur.