# MARTHA A. JOHNSON, Respondent, v, SPRING-FIELD TRACTION COMPANY, Appellant.

### Springfield Court of Appeals, February 24, 1914.

1. **STREET RAILWAYS: Injuries Resulting in Death: Evidence Reviewed.** Action by widow for negligent killing of her husband in a collision between a street car and vehicle. Evidence *held* to show that injuries received by her husband in collision were the cause of his death.

2. **APPELLATE PRACTICE: Objection to Evidence: Must be Specific, When.** Where only a general objection was made and not one directing the trial court's particular attention to the form of question asked a physician as to the cause of death, complaint will not be heard by appellate court on the ground that the question called for a conclusion of fact by the expert and invaded the province of the jury.

3. **STREET RAILWAYS: Negligence: Collision with Wagon: Motorman's Mistake in Judgment.** In an action by a widow for the negligent killing of her husband in a collision between a street car and a wagon in which he was riding, it is not an answer to the negligence that the motorman made an error in judgment in thinking he could pass the wagon safely.

4. **————: Death from Employee's Negligence: Statutory Provision as to Penalty.** Under Sec. 5425, R. S. 1909, where liability is established, a judgment necessarily involves some penalty, the statute providing that for every death occasioned by the negligence of a street car employee the defendant shall forfeit and pay as a penalty a sum of not less than $2000 nor more than $10,000 in the discretion of the jury.

5. **STREET RAILWAYS: Death by Negligence of Employee: Statutory Provision: Penalty.** Under Sec. 5425, R. S. 1909, which provides that for every death resulting from negligence of a street car employee the defendant shall forfeit and pay as a penalty a sum of not less than $2000 nor more than $10,000 in the discretion of the jury, a recovery thereunder is penal to the sum of $2000; but the extent to which a plaintiff may recover, if at all, in excess of $2000 is remedial and compensatory. [STURGIS, J., dissenting.]

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED (*on condition*).

*Delaney & Delaney*, for appellant.

(1) The court erred in permitting so-called hypothetical questions to be propounded which did not embrace all the facts and circumstances in evidence in the case. Smith v. M. & K. Tel. Co., 113 Mo. App. 429; Bragg v. Railway Co., 192 Mo. 331; Glasgow v. Railway Co., 191 Mo. 347; Spaulding v. City of Edina, 122 Mo. App. 65; State v. Forsha, 190 Mo. 296; Smith v. Kansas City, 125 Mo. App. 150; Baeher v. Union Co., 133 Mo. App. 541; Taylor v. Grand Ave. Co., 191 Mo. 347; Heiberger v. Tel. Co., 133 Mo. App. 452. (2) Before plaintiff can recover, the evidence must show that the accident and injury complained of caused the death of deceased. Byerly v. Light Co., 130 Mo. App. 593; Dunphy v. Stock Yds. Co., 118 Mo. App. 516; Trigg v. Ozark Co., 187 Mo. 227; Gorensson v. Mfg. Co., 186 Mo. 300. (3) An instruction which by its terms and plain meaning covers the whole case and, on the facts therein stated, peremptorily directs a verdict for plaintiff, must cover every phase of the case and must include the defences interposed. Stewart v. Andes, 110 Mo. App. 243; Scanlan v. Gulick, 199 Mo. 449; Austin v. Transit Co., 115 Mo. App. 146; Johnson v. Railroad, 117 Mo. App. 308; Rudd v. Fire Co., 120 Mo. App. 16; Abbott v. Marion Min. Co., 112 Mo. App. 550; Grier v. Strother, 111 Mo. App. 38; Flaherty v. Transit Co., 207 Mo. 318; Toncrey v. Railway Co., 120 Mo. App. 596; Balles v. Railway Co., 134 Mo. App. 696; Johnson v. Railway Co., 203 Mo. 381; Teddick v. Car Co., 125 Mo. App. 24; Percell v. Railway Co., 126 Mo. App. 43-53. (4) Instruction No. 3 is erroneous, because inconsistent and contradictory and because it assumes that the humane doctrine may apply even if the negligence of deceased directly contributed. Wallack v. St. Louis Transit Co., 123 Mo. App. 160. (5) The burden of proving that deceased was in imminent peril and was unconscious

thereof and that had defendant been in the exercise of reasonable care he would have had knowledge of such facts in time to avert injury is upon the plaintiff. Burde v. Railway, 123 Mo. App. 634. (6) Negligence cannot be inferred from mere fact of accident. Lee v. Jones, 181 Mo. 291; Corvin v. St. Louis, 151 Mo. 345; Yarnell v. Railroad, 113 Mo. 580; Breen v. Cooperage Co., 50 Mo. App. 214.

*George Pepperdine* and *Patterson & Patterson,* for respondent.

(1) It is a well-settled practice in this State that contributory negligence is a matter of defense and should be pleaded in the answer, in order to be available as a defense to plaintiff's cause of action, and the plaintiff need not allege or prove that he was without fault at the time of the injury. Petty v. Railroad, 88 Mo. 306; Hudson v. Railroad, 101 Mo. 13; Young v. Iron Co., 103 Mo. 324; Meiley v. Railroad, 215 Mo. 587. (2) Instructions should be construed as a col lective whole. McKinstry v. St. Louis Transit Co.. 82 S. W. 106. (3) A court is warranted in refusing a party's instructions because of their multiplicity. Renshaw v. Fireman's Ins. Co., 33 Mo. App. 395; Mc-Allister v. Barnes, 35 Mo. App. 674; Desberger v. Harrington, 28 Mo. App. 636; Kinney, Admx. v. City of Springfield, 35 Mo. App. 107; Doan v. Railway, 43 Mo. App. 454; Crawshaw v. Sumner, 56 Mo. 521. (4) Errors not materially affecting the merits are not ground for reversal. Orth v. Darschlieu, 32 Mo. 366; Phillips v. Evans, 64 Mo. 17; Crawford v. Cushman, 82 Mo. App. 554; Berkshen v. Railway Co., 144 Mo. 211; Boettger v. Scherpe & Koken Iron Co., 124 Mo. 87. (5) Points raised by the motion for a new trial, which are not urged in the brief or argument of counsel, will be considered as abandoned. Shaw v. Goldman, 183 Mo. 461. (6) Where appellant presents no argument

on the propriety of a certain ruling of the lower court, the Court of Appeals is justified in assuming that the propriety of such ruling is confessed. Powell v. Palmer, 45 Mo. App. 236.

FARRINGTON, J.—This suit was brought by the widow of James Johnson against the Springfield Traction Company under section 5425, R. S. 1909, for wrongfully and negligently killing her husband in a collision of one of its street cars and a vehicle (or rather a kitchen safe in a vehicle) in which deceased was riding. A judgment for five thousand six hundred dollars is appealed from.

The facts surrounding the collision and bearing on the question of defendant's negligence were at this term of court passed upon in an opinion prepared by Judge STURGIS in the case of Marth A. Johnson v. Springfield Traction Company, 161 S. W. 1193. A full statement of such facts is set forth in that opinion, the only difference being that in that case Mrs. Johnson sued for her personal injuries sustained in the same collision whereas in this she sues under the death statute for the loss of her husband. Many of the instructions involved in this case were considered in the other case, and as that opinion, together with the files in the case, passed in review before the Supreme Court upon an application for a writ of *certiorari,* and the writ was denied, we are reassured that the questions touching the points in that case which are also in controversy here have been correctly decided and will therefore receive no further consideration in this opinion.

There are three questions raised by appellant that were not in the other case, and they are of such importance as to require very careful consideration. The first to be discussed relates to the contention that the plaintiff failed to show that the death of James Johnson was caused by the injury received in the col-

lision. The second question concerns defendant's contention that it cannot be held for the error of judgment of its motorman in thinking he could pass with his car safely. Lastly, we will discuss the instructions on the measure of damages.

The record discloses that the collision occurred on September 2, 1912, and that Johnson died on September 12, 1912. The uncontroverted evidence is that the deceased was unconscious, or possibly in a semi-unconscious condition when he was lifted from the street and taken to the hospital, and that he remained so for at least two days. Some four or five days after the collision, erysipelas developed, and on the tenth day meningitis manifested itself, and this was the day before he died. The injuries were in the shoulder-blade and on the head, the injury on the head causing immediately the unconscious condition. Doctor Evans, who was the first physician on the ground, and who attended Johnson in the hospital, was first asked by an attorney for the plaintiff: "Now I will get you to state what in your opinion as a physician caused Mr. Johnson's death?" This question was objected to by counsel for defendant and the objection sustained. He was then asked by plaintiff's counsel the following question: "I will get you to state whether or not if a person receiving such an injury as Mr. Johnson received there and had an injury on his head and other injuries that you speak of, I will ask you whether or not that might produce death?" Counsel for defendant objected "because the gentleman doesn't fully cover the case and because the witness is not qualified. He has testified he was there only part of the time and was not there at the time of death." The objection being overruled, the witness answered: "A person of his age, it would." Doctor Fulbright testified that he saw Mr. Johnson the day the injury occurred very soon after being taken to the hospital,

178 Mo. App. 29

and subsequently saw him several times before his death; that he attended the patient during the ten days, and that he never rallied thoroughly from unconsciousness; that erysipelas developed in four or five days; and that this disease could bring on meningitis, which he said was the disease causing Johnson's death. The evidence all tends to show that Johnson died as a result of the injuries received in the collision. Indeed, there is no fact proven or theory advanced by the defendant denying that Johnson was injured and that he received the injuries testified to by plaintiff's witnesses, or that the erysipelas, meningitis and death were brought on by any intervening cause. There is uncontroverted testimony in the record that erysipelas is an infectious disease, and that it can originate only through an abrasion, and that it is impossible to tell just when the wound or abrasion becomes infected with the erysipelas. Therefore, defendant insists that the physician having sworn that Johnson died from meningitis, and that the form of meningitis from which he died may come from erysipelas, and that it is impossible to tell when the infection causing the erysipelas entered the wound, there is a failure to connect the death with the wounds or abrasions received in the collision, and that defendant could not reasonably expect erysipelas and meningitis to follow even though its servants were negligent in causing the wounds or abrasions. This is fallacious as the testimony all shows that erysipelas manifests itself only through a wound or abrasion. It is therefore readily seen that if this is the only way in which an injured person may be infected with erysipelas, those who cause such wounds or abrasions may expect that erysipelas will or may follow as a natural consequence of such injury. There is no showing by the defendant that the deceased at any time prior to the collision had erysipelas, or that he received any wound, or was subjected to any condition other than the wound which he received in the

collision that would bring about such infectious disease. This testimony, coupled with the testimony of Doctor Evans that the results which actually followed might follow such an injury, and that of Doctor Fulbright, the other attending physician, that they did follow, leaves the question beyond all cavil that the injuries received in the collision caused the death of plaintiff's husband.

Objection was made to the form of questions put to Doctor Fulbright. The questions, answers, and objections bearing on this point are as follows: "Q. You have deaths from meningitis and erysipelas? A. Yes, sir. Q. In this case what was the cause of his death? A. The cause of his death was meningitis. Q. What did that come from, in your opinion? *By Mr. Delaney*: We object to that. It is stating a fact." The objection was overruled, but the witness did not answer. Again quoting: "Q. What, in your opinion, caused meningitis in this case? *By Mr. Delaney*: We object to that. He can state the facts just as he found them there." The objection was overruled, and the witness answered: "The injury, I would say, caused meningitis. Q. The injury he received? A. Yes, sir."

It is insisted that the form of the questions was improper and contrary to the law in this State governing the introduction of expert witnesses and the form of hypothetical questions. The law on this subject has been recently expounded in the following cases: State v. Hyde, 234 Mo. 1. c. 251-253, 136 S. W. 316; Castanie v. United Rys. Co., 249 Mo. 192, 155 S. W. 38; Wood v. Railway Co., 181 Mo. 433; 81 S. W. 915; Longan v. Weltmer, 180 Mo. 322, 79 S. W. 655; Taylor v. Railroad, 185 Mo. 239, 84 S. W. 873; Torreyson v. United Rys. Co., 246 Mo. 696, 152 S. W. 32; Roscoe v. Railway Co., 202 Mo. 576, 101 S. W. 32; DeMaet v. Storage, P. and M. Co., 231 Mo. 615, 132 S. W. 732. In all these cases it will be noted that the issue or con-

test was sharply drawn, the plaintiff advancing a theory to connect the injury or resulting disease or death with the defendant's negligence, and the defendant developing a contrary theory as a cause of the injury or resulting disease or death. In those cases it was correctly held that it is improper to permit an expert to draw a conclusion of fact which should have been left to the jury. In this case, however, the defendant has advanced no theory whatever that could have explained the death, while all the plaintiff's testimony shows that it was the direct result of the injuries received in the collision. In other words, there was no contest. The question as to what caused the death was not an issue, unless it can be said that the mere speculation or suspicion that the erysipelas infected the deceased in some way unaccounted for or unknown to the defendant is a showing that the deceased contracted the disease in some way other than through the injuries received in the collision. And to us it seems that it would not be, under these circumstances, prejudicial to allow the attending physician to say that the meningitis which was the disease directly causing death was caused by the injuries received, there being no contest or question involved in the case that he did receive the injuries at the identical place where the collision occurred. [Bragg v. Street Ry. Co., 192 Mo. 331, 343, 91 S. W. 527; Porter v. Hetherington, 172 Mo. App. 502, 513, 158 S. W. 469, and cases cited.]

But it is unnecessary for us to decide that the questions put to Doctor Fulbright caused him to usurp the function of the jury, because, in order to save the point, defendant must have objected to the questions, directing the trial court's particular attention to the form of the questions, and giving as a reason for the objection that the questions called upon the expert to give a conclusion of fact and thus invade the province of the jury. It will be noted that the objection made was general, and in no way calculated to call the

court's attention to the error now alleged—"We object to that. He can state the facts just as he found them there." It would seem that the person making this objection did not have in mind the point now insisted upon, namely, that the questions called for a conclusion of fact rather than an opinion of the expert. That such general objection is not sufficient to save the point is held in the cases of Longan v. Weltmer, 180 Mo. 322, 79 S. W. 655; Roscoe v. Railway Co., 202 Mo. 576, 595, 101 S. W. 32; DeMaet v. Storage, P. and M. Co., 231 Mo. 615, 620, 132 S. W. 732; and Bragg v. Street Ry. Co., 192 Mo. 331, 342, 91 S. W. 527. We hold that the finding of the jury, so far as fastening negligence and liability on the defendant for the death of plaintiff's husband is concerned, is based on sufficient evidence and proper instructions.

The contention of appellant that negligence could not be laid at its door if its motorman merely made an error in judgment in thinking he could pass the wagon in safety is not well taken. A similar contention was made in the case of Porter v. Hetherington, 172 Mo. App. 502, 158 S. W. 469, where the court held that such error of judgment was no answer to the negligence. In view of the fact that the defendant in this case, as in that, had a clear view of the person injured in sufficient time and space to have so controlled the car as to have averted the accident, and failed to do so, it is liable. There is no evidence in this case that deceased moved from a place of safety to a place of danger shortly before the collision. [See, also, Flack v. Railroad, 162 Mo. App. 650, 659, 145 S. W. 110.]

We will now discuss the instructions on the measure of damages. The defendant asked two instructions which erroneously confined the entire amount recoverable to compensatory damages. The court properly refused these instructions because a judgment under section 5425, Revised Statutes 1909, where lia-

bility is established, necessarily involves some penalty. The measure of damages fixed by the instruction asked by the plaintiff and given we think erroneously allows a verdict as penalty for a greater sum than that authorized by the statute under the last ruling of the Supreme Court in the case of Boyd v. Railroad, 249 Mo. 110, 126, 155 S. W. 13. The plaintiff's instruction, which was given, is as follows: "The court further instructs the jury that if under the other instructions you find for the plaintiff, you will return a verdict in her favor in such sum not less than two thousand dollars, and not exceeding ten thousand dollars, as in your discretion should be awarded to her and inflicted upon the defendant as a penalty for the death of her husband caused by the negligence of the defendant, if you find there was such negligence which caused such death, taking into consideration all the facts and circumstances in evidence before you." It will be readily seen that this instruction permits the jury to inflict . upon the defendant as a *penalty* a verdict for a sum not less than two thousand dollars and not exceeding ten thousand dollars, and the verdict returned and judgment rendered is for five thousand six hundred dollars.

The history of the judicial construction of section 5425, Revised Statutes 1909, since it was amended in 1905 may be found by reading the cases of Young v. Railroad, 227 Mo. 307, 127 S. W. 19; Murphy v. Railroad, 228 Mo. 56, 128 S. W. 481; Boyd v. Railroad, 236 Mo. 54, 139 S. W. 561; and Boyd v. Railroad, 249 Mo. 110, 155 S. W. 13. The following language found in the opinion in the last Boyd case (249 Mo. l. c. 126) induces us to believe that the *penalty* fixed by the statute cannot exceed two thousand dollars and that any amount recovered in excess of two thousand dollars is remedial and compensatory: "In other words, a recovery under section 5425, Revised Statutes 1909, is penal up to the sum of $2000, but the extent to which

a plaintiff may recover, if at all, in excess of $2000 under that section is remedial and compensatory.'' As the instruction in the case under consideration fixed the full amount of penalty at between two thousand dollars and ten thousand dollars, the verdict of five thousand six hundred dollars returned by the jury was manifestly erroneous. It will be noted that the instruction in the last Boyd case (page 120) permits a recovery of not less than two thousand dollars and not exceeding ten thousand dollars in the discretion of the jury, and advises them that in determining the amount to be allowed they may take into consideration the *pecuniary loss*, and may take into consideration the facts constituting the negligence on the part of the defendant, together with other evidence bearing entirely on the compensatory feature. This instruction is not expressly approved or criticised, because in that case the Supreme Court was discussing the admissibility of evidence; and the instruction is not in conflict in any way with the language of the court in summing up just what they do mean in construing the section under consideration. As stated, the language contained in the opinion in the last Boyd case (249 Mo. l. c. 126) limits the penalty recoverable under section 5425 to two thousand dollars, and this is emphasized by the separate concurring opinion of GRAVES, J., in that case (in which FARIS, J., concurred), wherein he holds in language unmistakable that the section is in no way penal as to any amount recoverable in excess of two thousand dollars. This question was incidentally before us in the case of Harshaw v. Railway Co., decided at the last term, —— Mo. App. ——, 159 S. W. 1, when the writer of this opinion stood alone in the pronouncement of the views herein expressed. Subsequently, however, the Kansas City Court of Appeals in the case of Johnson v. Railway Co., —— Mo. App. ——, 160 S. W. 5, in discussing the same statute in connection with the decision in the last Boyd case announced the

same construction of the language of the Boyd case
that we adhere to, and the St. Louis Court of Appeals
in the case of Lasater v. Railway Co., —— Mo. App.
——, 160 S. W. 818, with one of its members dissent-
ing, held that the construction placed upon the stat-
ute by the decision in the last Boyd case in that no sum
can be recovered in excess of two thousand dollars as a
*penalty*. Thus strengthened in our belief by the course
of our contemporaries, we hold that the instruction
given in the case at bar is erroneous in that it fixes
the amount of the *penalty* recoverable at a sum in ex-
cess of two thousand dollars. Being satisfied, how-
ever, that a cause of action to recover the penalty was
established, we hold that the judgment is erroneous
as to all in excess of two thousand dollars and it will
be affirmed for that amount only. Unless, therefore,
respondent within ten days shall file with the clerk of
this court a written remittitur of all the judgment in
excess of two thousand dollars, the judgment will be
reversed and the cause remanded for a new trial.
*Robertson, P. J.,* concurs in a separate opinion.
*Sturgis, J.,* dissents, in part, in a separate opinion.

## SEPARATE CONCURRING OPINION.

ROBERTSON, P. J.—This is the first case in
which I have deemed section 5425, Revised Stat-
utes of 1900, before us for construction with refer-
ence to its penalty feature.

The constitutional amendment of 1884, section 6,
has made the last previous ruling of the Supreme
Court on any question of law the controlling authority
here. Our personal views upon any question of law
before us upon which the Supreme Court has spoken
can have no binding force. The Constitution
has so decreed and I shall be so governed and
shall, therefore, content myself with stating that I have
read and considered, to the full extent of my ability,

the case of Boyd v. Railroad, 249 Mo. 110, 115 S. W. 13, together with all of the authorities leading up to and bearing upon it, and have concluded that it holds that said section 5425 limits the penal feature of the recovery therein authorized to the sum of two thousand dollars and that it is, therefore, our duty to and we must hold that the instruction quoted by FARRINGTON, J., is erroneous and that the judgment should be reversed and the cause remanded, unless the plaintiff will cure all errors caused thereby by remitting the amount in excess of two thousand dollars. I, therefore, concur with *Farrington, J.*

## DISSENTING OPINION.

STURGIS, J.—I concur in the opinion of Judge FARRINGTON in this case except as to the construction placed by him on the opinion in Boyd v. Railroad, 249 Mo. 110, 155 S. W. 13, as to the measure of damages under section 5425, Revised Statutes 1909. My views on this matter were expressed to some extent in Harshaw v. Railroad, 159 S. W. 1, to which I again refer. As pointed out in the majority opinion, this question has also been before both the other Courts of Appeals and those courts have the same difficulty we have in understanding the full scope of the Boyd case, supra. It is apparent on reading the decisions of the Courts of Appeals, Johnson v. Railroad, 160 S. W. 5, by the Kansas City Court, Lasater v. Railroad, 160 S. W. 818, by the St. Louis Court, and Harshaw v. Railroad, supra, by this court, that all the Courts of Appeals are somewhat reluctant to interpret the Boyd case, supra, as holding that section 5425 is penal only as to the minimum amount of $2000 and is purely and solely compensatory as to any amount above that sum. We all agree that if the Supreme Court has or does so decide, then we have nothing to say as to the correctness of such decision and will follow it, but we are

naturally reluctant to so interpret a decision of the Supreme Court as to lead to a result which we think is wrong.

The evidence in the present case is such that on account of the old age of plaintiff and her deceased husband, his physical condition and lack of earning capacity at the time of his death, there being no minor children thrown on plaintiff for support, etc., if a judgment above $2000 is purely compensatory to plaintiff, then there is no evidence in this record to support a verdict for any such excess and, regardless of any instructions given or refused, the verdict is excessive as to such excess and an order of remittitur should go.

In determining what the opinion in the Boyd case actually decides, the language used, as in all opinions, must be understood and interpreted in the light of the point actually before and being decided by the court. In that case the only question calling for a construction of section 5425 as to the measure of damages was the admissibility of evidence of a compensatory nature, the age, earning capacity, etc., of deceased, and the giving of an instruction telling the jury to take these matters into consideration in determining the amount of the verdict within the limits fixed by the statute. The court was combating, and decided adversely, the contention that the statute since the amendment is purely and solely penal throughout the whole range of damages now allowed, just as it was purely penal before the amendment, when $5000, no more or no less, could then be recovered. That contention is disposed of thus: "It might be urged that they are to consider *only* circumstances attending the negligence, unskillfulness or criminal intent of the party or corporation causing the death for which recovery is sought, but it would be much more reasonable to suppose it was the legislative intent that, in exercising its discretion as to the amount for which a verdict in excess of $2000

should be rendered, the jury should *also* consider the necessary injury sustained by the party seeking the recovery.''

The courts have steadily ruled that this statute prior to being amended in 1905 gave a fixed penalty and that no evidence of a compensatory character or tending to show the pecuniary loss of plaintiff was admissible. For the same reason evidence relating to the degree of negligence or showing wantonness or criminal intent was not admissible on the measure of damages. When, by the amendment, the jury was given a discretion to fix, within the designated limits, the amount which the offending carrier ''shall forfeit and pay as a penalty'' for each person killed, the Supreme Court properly said in the Boyd case, supra, that the jury should receive as a basis for the exercise of an intelligent discretion ''evidence of the age, condition of health and earning capacity of the party killed, and the consequent loss to the plaintiff thereby, *together with the facts and circumstances attending the killing,* for which damages are sought to be recovered.'' If there is no penalty except the fixed minimum of $2000 and the penal feature has nothing to do with the amount awarded above such minimum and the same is purely compensatory, then why, in determining the amount to be awarded above that sum, should the jury consider the ''facts and circumstances attending the killing''? If the amount above $2000 is purely compensatory and measured by the pecuniary loss to the party suing, then it matters not so far as the amount to be recovered is concerned, just as it did not matter under the old statute, whether ''the man was killed through mere negligence, unaccompanied by any wantonness or criminal intent'' or the reverse.

If the amount above the fixed penalty of $2000 is purely and solely compensatory, it is evident that

where the plaintiff sues for a larger amount the case is to be tried and the jury instructed exactly like it would be if brought under sections 5426-7, which is solely compensatory, except that the minimum recovery is $2000. In that view of the law the mere determination of defendant's liability entitles plaintiff to $2000 damages and the jury should be instructed, as requested by defendant in this case, that "in awarding (further) damages you will not be actuated by a desire to punish the defendant; you must be governed solely by the law which limits allowance of damages to a reasonable compensation for damages sustained by the plaintiff by reason of the death of her husband, James Johnson. And in determining the reasonable amount of damages so to be awarded, you should take into consideration the age and physical condition of the deceased, his expectancy of life, his pursuit in life, if any, and after considering all such facts and circumstances you will award such reasonable sum as you think will reasonably compensate the plaintiff, not to exceed the sum of ten thousand dollars." The instructions might go even further and tell the jury that if they found for plaintiff to award her at least $2000, but that they should disregard any and all evidence showing gross negligence, intentional wrong or wantonness or any aggravating circumstances attending the killing and to confine themselves strictly to the pecuniary loss to plaintiff in allowing any further amount. Hitherto the expression "in the discretion of the jury" would have been considered too broad and speculative to apply to compensatory damages. "It is error to submit such cases with the general instruction that the jury may find such damages as, in their judgment from the evidence in the cause, the plaintiff ought to recover." [McGowan v. Ore & Steel Co., 109 Mo. 518, 531, (19 S. W. 199).] The compensatory damages allowed must be limited to the necessary pecuniary loss resulting to plaintiff from the death. An instruction should

point out the elements which enter into the financial loss and the methods of calculating the same as near as possible; in other words, make the damages as near as may be a mathematical calculation of the loss actually sustained and remove the same as far as possible from the discretion of the jury. [Parsons v. Railroad, 94 Mo. 286, 296, 6 S. W. 464.]

It may well be asked also whether a plaintiff suing for more than the $2000 penalty under section 5425 is to be denied the right given, even under sections 5426-7, to recover exemplary damages in cases where wantonness, criminal intent or recklessness is shown. [Barth v. Kansas City El. Ry. Co., 142 Mo. 535, 558, 44 S. W. 778.]

I find that in the Boyd case, supra, an instruction was given, much like the one given in this case on the measure of damages, allowing the jury to award "a sum not less than $2000 nor more than $10,000, in the discretion of the jury, and in determining the amount you will allow her you may take into consideration the pecuniary loss occasioned to the plaintiff by the death of her husband and may *also* take into consideration the *facts constituting negligence* on the part of defendant causing the death." This instruction was approved in allowing the jury, as a basis of exercising their discretion as to the amount of damages to be allowed between $2000 and $10,000, to consider the pecuniary loss, as the statute is not wholly penal above the minimum; and it was not condemned as allowing a consideration of the facts constituting negligence, i. e., the degree of defendant's culpability, as the statute is not purely compensatory as to the amount within such limits.

I find also that the Boyd case, supra, was decided almost simultaneously with Harding v. Railroad, 248 Mo. 663, 154 S. W. 711, which was an action under section 5425 by the wife for the death of her husband. The Supreme Court approved a peremptory instruction

to find for plaintiff which fixed the measure of damages at "not less than $2000 nor more than $10,000, in the discretion of the jury." The verdict was for $5,500. There was certainly nothing there to limit the damages in excess of the fixed penalty of $2000 to the necessary pecuniary loss sustained by the wife for her husband's death. I do not think the Boyd case was intended to be in conflict with or to overrule this case.

It is pointed out by the Kansas City Court of Appeals in the Johnson case, supra, that the word "forfeit," used in section 5425, implies a penalty and that the statute says "forfeit and pay as a penalty," not $2000, but *any sum* not less than $2000 nor more than $10,000. The only word in the statute which puts into it the compensatory feature is "discretion," which, as said in the Boyd case, implies the right to "acquire a full knowledge of all the facts upon which the discretion must operate." This lets in the facts, on the measure of damages, showing the pecuniary loss of the plaintiff, but it certainly does not shut out the facts which show "whether the conduct of defendant, which caused the death, arose from mere inattention or was willful, wanton, or reckless," as quoted from Young v. Railroad, 227 Mo. 307, 127 S. W. 19. It is true that the Young case and the first Boyd case, 236 Mo. 54, 139 S. W. 561, were overruled in the last Boyd case, supra, but only so far as inconsistent with that case, which, as I understand it, was only to the extent of it being error to hold that the amount to be recovered was purely penal throughout and did not permit evidence of a compensatory nature.

In my opinion this case should be affirmed unconditionally and, believing that it is in conflict with Boyd v. Railroad, supra, and Harding v. Railroad, supra, I ask that the same be certified to the Supreme Court, unless plaintiff sees fit to voluntarily remit the amount in excess of $2000.