# E. W. TURNER, Respondent, v. TYLER LAND & TIMBER COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted February 1, 1915. Opinion Filed March 2, 1915.

1. MASTER AND SERVANT: Injury to Servant: Contibutory Negligence. In an action for injuries sustained by a servant operating a bolting saw attached to a shaft on which was a large iron clutch-coupling, by reason of being struck on the head by the coupling while he was in a pit under the shafting clearing away debris, *held*, under the evidence, that whether he was guilty of contributory negligence was a question for the jury.

2. APPELLATE PRACTICE: Conclusiveness of Verdict. A verdict rendered on conflicting evidence is conclusive, on appeal.

3. MASTER AND SERVANT: Injury to Servant: Unguarded Machinery: Sufficiency of Evidence. In an action for injuries sustained by a servant operating a bolting saw attached to a shaft on which was a large iron clutch-coupling, by reason of being struck on the head by the coupling while he was in a pit under the shafting clearing away debris, evidence *held* to show that the coupling was a part "so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties," within Sec. 6433, R. S. 1899; evidence *further held* to show that it was practicable to have put a guard around the shaft with its clutch-coupling, so as to render it safe for the operator working under it, and that to have so guarded it would not have interfered with its operation, and, this being so, it was defendant's duty, under Sec. 6433, to guard it, regardless of whether the coupling was considered as part of the "shafting" or as "gearing;" and hence it is *held* that the question of defendant's negligence was for the jury.

4. ——: ——: ——: Notice by Factory Inspector Unnecessary. An employer's failure to guard shafting and gearing, as required by Sec. 6433, R. S. 1899, was negligence, although the installation of guards had not been directed by a factory inspector.

5. ——: ——: ——: Construction of Statute. Sec. 6433, R. S. 1899, providing that the belting, shafting, gearing and drums in all manufacturing, mechanical, and other establishments, when so placed as to be dangerous to persons employed

therein or thereabout, while engaged in their ordinary duties, shall be safely and securely guarded, when possible, applies to all manufacturing establishments in the State, and is not limited to cities having a population of 5000 or over, notwithstanding Sec. 1 of the Act (Acts 1891, page 159) makes it the duty of the authorities of cities having a population of 5000 inhabitants or more, to appoint factory inspectors, and notwithstanding Sec. 6433 was placed by the compilers of the Revised Statutes of 1899 in the chapter relating to cities, towns and villages.

6. **STATUTES: Compilation of Revised Statutes: Effect of Placing Statute under Wrong Heading.** The compilers of the Revised Statutes, by placing an act in a certain article or chapter, or by giving it a wrong designation, cannot change its meaning or limit its application.

7. **MASTER AND SERVANT: Injury to Servant: Unguarded Machinery: Pleading: Sufficiency of Petition.** The petition, in an action for injuries sustained by a servant operating a bolting saw attached to a shaft on which was a large iron clutch-coupling, by reason of being struck on the head by the coupling while he was in a pit under the shafting clearing away debris, *held* to state a cause of action under Sec. 6433, R. S. 1899, requiring shafting, gearing, etc. in manufacturing establishments to be guarded.

8. ———: ———: ———: **Opinion Evidence: Qualifications of Experts.** In an action for injuries sustained by a servant operating a bolting saw attached to a shaft on which was a large iron clutch-coupling, by reason of being struck on the head by the coupling while he was in a pit under the shafting clearing away debris, *held* that blacksmiths, who were also machinists and employed as such by defendant and personally acquainted with the particular appliance, were qualified as experts to express an opinion as to whether the coupling could have been safely guarded without interfering with the operation of the machinery, as required by Sec. 6433, R. S. 1899.

9. ———: ———: ———: **Evidence: Contributory Negligence.** In an action for injuries sustained by a servant operating a bolting saw attached to a shaft on which was a large iron clutch-coupling, by reason of being struck on the head by the coupling while he was in a pit under the shafting clearing away debris, evidence as to the proper method that should have been employed in clearing away such debris was properly excluded, especially as no evidence tending to show that plaintiff knew of any such method was offered.

10. ———: ———: **Contributory Negligence.** Even though there are two methods of doing work, one of which is less dangerous

Turner v. Timber Co.

than the other, a servant is not necessarily negligent because he happens to select the more dangerous one.

11. ——— : ———: Unguarded Machinery: Instructions. In an action for injuries sustained by a servant operating a bolting saw attached to a shaft on which was a large iron clutch-coupling, by reason of being struck on the head by the coupling while he was in a pit under the shafting clearing away debris, held that the instructions given for plaintiff, submitting the question of whether defendant was negligent under Sec. 6433, R. S. 1899, requiring shafting, gearing, etc., in manufacturing establishments to be guarded, were free from error.

12. INSTRUCTIONS: Refusal: Covered by Other Instructions. It is not error to refuse an instruction which submits questions that are properly covered by other instructions given.

13. DAMAGES: Personal Injuries: Excessiveness of Verdict. Plaintiff was struck on the head by a large iron clutch-coupling on a revolving shaft, and sustained a fracture of the skull. Physicians trepanned the skull, removing broken portions thereof. The skull was considerably depressed by the blow, and a blood vessel of considerable size was bursted, requiring that it be twisted and tied together. Four years after the accident, the depression was still visible, and, even after it healed, the injury would be apt to cause headaches and nervous troubles. There was evidence that plaintiff's nervous system was impaired, and that he had complained of being nervous and of having pains in his head, neck, and back. Held, that a verdict for $7000 was not excessive.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*John A. Hope* and *Ernest A. Green* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence as prayed for by defendant at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, and erred in not peremptorily instructing the jury that under the law and the evidence plaintiff could not recover and to return a verdict for the defendant. (a) The evidence as disclosed by the plaintiff and as a whole, showed that

plaintiff as a matter of law was guilty of contributory negligence.   Lore v. American Mfg. Co., 160 Mo. 621; Colliott v. Mfg. Co., 71 Mo. App. 163; Huss v. Bakery. Co., 210 Mo. 44; Simpson v. Iron Works, 249 Mo. 386. (b)   Plaintiff had no cause of action under the statute sued on, as that one applies only to such machines as are dangerous to employees while in the performance of their ordinary duties, which plaintiff was not at the time of receiving the injury complained of by him. Laws, 1891, page 159; Sec. 6433, R. S. 1899; Sec. 7828, R. S. 1909, (Laws 1909, p. 502) ; Lang v. Bolt & Nut Co., 131 Mo. App. 146; Meifert v. Sand Co., 124 Mo. App. 491; Strode v. Columbia Box Co., 250 Mo. 695; Forbes v. Dunnavant, 198 Mo. 210; Strode v. Box Co., 124 Mo. App. 511; Powalskie v. Brick Co., 110 Wis. 461; Wyncoop v. Mfg. Co., 30 L. R. A. (N. S.) 40, 196 N. Y. 324; Stodden v. Anderson & Winter Mfg. Co., 16 L. R. A. (N. S.) 614; Cement Company v. Insurance Co., 162 N. Y. 403; Robbins v. Fort Wayne Co., 41 Ind. App. 557; Findlay v. Columbia Box Co., 124 U. S. 511; Dillon v. Coal Tar Co., 181 N. Y. 215; Byrne v. Carpet Co., 61 N. Y. Supp. 741.   (c)   The statute under which this action is brought does not require the guarding of the character of "clutch coupling " which caused the injury and, therefore, plaintiff could not recover under said statute.   Laws, 1891, p. 159; Sec. 6433, R. S. 1909; Sec. 7828, R. S. 1909, (Laws, 1909, p. 502) ; Smith v. Box Co., 193 Mo. 715; Czernicke v. Ehrlich, 212 Mo. 386; Cole v. Lead Co., 130 Mo. App. 253; Strode v. Columbia Box Co., 250 Mo. 695; Simpson v. Iron Works, 249 Mo. 389; Forbes v. Dunnavant, 198 Mo. 210.   (d)   Plaintiff could not recover under the statute sued upon in this case, as there was no evidence that the State Factory Inspector had directed the instalation of guards on the coupling in question. Laws, 1891, p. 159, sec. 16; Sec. 6446, R. S. 1899; Strode v. Columbia Box Co., 250 Mo. 695; Simpson v. Iron Works, 249 Mo. 376; Williams v. Railroad, 233 Mo.

682; Foley v. Machine Works, 149 Mass. 297; Borck
v. Bolt & Nut Co., 111 Mich. 133; Kerr v. Brass Mfg.
Co., 151 Mich. 191. (e) The statute upon which plain-
tiff's alleged cause of action was founded, is unconsti-
tutional in that the title to the legislative act creating
said statute does not disclose its true contents. Fur-
thermore, said act is violative of both the Federal and
State Constitutions in denying to defendant the equal
protection of the laws, and is special and class legis-
lation. Laws, 1891, p. 159; Sec. 28, Art. 4, Constitu-
tion of Missouri; Sec. 1, Art. 14, Amendments to Con-
stitution of U. S.; Sec. 53 & 54, Art. 4, Constitution
of Missouri; Simpson v. Iron Works, 249 Mo. 376;
Williams v. Railroad, 233 Mo. 680; Durkin v. Kings-
ton Coal Co., 171 Pa. St., 193, 33 Atl. 237, 50 Am. St.
801, 29 L. R. A. 808. (f) The statute sued upon by
the plaintiff has no application to the facts of this
case, as it applies only to cities of 5000 inhabitants or
more. Article 17, Chapter 91, R. S. 1899; Knowlton v.
Moore, 178 U. S. 41, 44 L. R. A. 969; Barnes v. Jones,
51 Cal. 303; People v. Molyneux, 40 N. Y. 113. (2)
Plaintiff's petition wholly failed to state a cause of
action and the court erred in refusing to sustain the
defendant's objection *ore tenus* to the introduction of
any evidence whatever under the same. Authorities
cited under point 1. (3) The trial court erred in ad-
mitting incompetent testimony on the part of the plain-
tiff and over the defendant's objection, viz: the opin-
ion evidence of witnesses who were not qualified as
experts, to the effect that this clutch coupling could
have been safely guarded without interfering with the
operation of the machinery. Guffey v. Railroad, 53
Mo. App. 462; Helfenstein v. Medart, 136 Mo. 595;
Pullman's Palace Car Co. v. Harkins, 55 Fed. 932;
Allen v. Lumber Co., 171 Mo. App. 492; Campbell v.
Railroad, 175 Mo. 161; Statler v. Railroad, 200 Mo.
126; Benjamin v. Railroad, 50 Mo. App. 602; Turner v.
Haar, 114 Mo. 335; Goins v. Railroad, 47 Mo. App.

173.  (4)  The court erred in excluding on plaintiff's objection, competent testimony offered by the defendant as to the proper method which should have been employed by the plaintiff in cleaning out the blow pipe. 26 Cyc., p. 1433; Devaney v. Constr. Co., 178 N. Y. 620, 70 N. E. 1028; Greenwell v. Crow, 73 Mo. 640; Carl v. Pierce, 20 Ohio Cir. Ct. 68; Fritz v. Western Union Tel. Co., 25 Utah, 263, 71 Pac. 209.  (5)  The court erred in giving to the jury instructions 1, 2 and 3 on part of the plaintiff.  These instructions give an erroneous and improper interpretation of the statute sued on and as applied to the machinery involved in this case.  Authorities cited under point 1; Chaney v. Railroad, 176 Mo. 598; Sack v. St. Louis Car Co., 112 Mo. App. 476; Cook v. Railroad, 94 Mo. App. 417.  (6)  The court erred in refusing to give to the jury instructions asked for by defendant, numbered 1, 2, 6, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24.  Cases cited under point 1, supra.  As to instruction number 2: Heuss v. Heydt Bakery Co., 210 Mo. 44; 38 Cyc., p. 1759; Railroad v. Burridge, 211 Ill. 9, 71 N. E. 838; Railroad v. Stonecipher, 90 Ill. App. 511; Illinois Commercial Men's Assoc. v. Perrin, 139 Ill. App. 543;   As to instruction number 6: Meiley v. Railroad, 215 Mo. 567; Waddingham v. Hulett, 92 Mo. 528; Eames v. New York L. Ins. Co., 134 Mo. App. 331.  As to instruction number 13: Kirchner v. Collins, 152 Mo. 394; Brown v. Railroad, 66 Mo. 588; Walker v. Railroad, 106 Mo. App. 321.  (7)  The damages awarded by the jury are so grossly excessive as to conclusively prove that the verdict must have been the result of bias, prejudice and passion on the part of the jury.  Partello v. Railroad, 217 Mo. 658; Baker v. Stonebraker, 36 Mo. 338; Spohn v. Railroad, 87 Mo. 84; Ice Co. v. Tamm, 90 Mo. App. 202; Adams v. Railroad, 100 Mo. 555; Chlanda v. Railroad, 213 Mo. 244.

*Ward & Collins* for respondent.

REYNOLDS, P. J.—This action was commenced in the circuit court of Pemiscot county. The petition avers that on March 18, 1907, plaintiff was employed in defendant's stave mill and factory to run and operate a bolting saw; that in such employment it was his duty to keep dust and trash which accumulated under and which was produced by the saw in cutting bolts out and away from the saw so that it could be carried away by means of a blow pipe; that this bolting saw operated on the end of a long iron shaft which revolved with exceedingly great speed; that the saw and its appurtenances were geared to the shaft by means of a large iron clutch-coupling; that to clean out this sawdust, plaintiff was obliged to go in a pit under this shafting to which the clutch-coupling was affixed, and to get down on his hands and knees and work along, about and immediately under this shaft and clutch-coupling. Averring that the shaft with this clutch-coupling as arranged, was exceedingly dangerous, which fact was known or might have been known to defendant but was unknown to plaintiff, and averring that he was wholly inexperienced in the operation of the bolting saw and in the work of cleaning out under it, plaintiff charges that while he was so working, the shaft with the clutch-coupling was revolving and he was working directly under the latter; in its revolution it struck him on the head, injuring him severely, laying him up for some time, causing him to lose much time from his labor, involving him in the expenditure of large sums for medical attendance, diminishing his wage-earning capacity, shattering his nervous system and permanently injuring him, plaintiff asks damages in the sum of $10,000.

The answer, after a general denial, pleads contributory negligence, assumption of risk, and negligence of plaintiff's fellow-servants. It is further pleaded that the statute invoked by plaintiff (section 6433, article 17, chapter 91, Revised Statutes 1899) does not

apply, and that if it does, the placing of guards around the mandrel and coupler would have interfered with the free, practical and effective operation of the machinery, for which reason defendant avers it was under no obligation to guard the machinery; that this mandrel and coupler were not within the meaning of the statute referred to and were not so placed in the mill as to be dangerous to persons employed therein while engaged in their ordinary duties and were not dangerous to plaintiff while engaged in the ordinary duties of his employment, and that defendant was under no duty, under the statute, to place guards around or about the machinery mentioned in the petition. It is further set up that defendant was not liable under the statute until a factory inspector had first examined the machinery and pronounced it not sufficiently guarded. It is also pleaded that this statute applies only to cities of 5000 inhabitants or more and that the town of Tyler, where the mill is located, has less than 100 inhabitants. Finally the statute is attacked as unconstitutional, as in violation of sections named of the Constitution of the United States and of this State.

It does not appear that a reply was filed to this, but the cause was tried as if these averments in the answer were in issue.

At a trial before the court and a jury there was a verdict for plaintiff in the sum of $7000, judgment following, from which an appeal was perfected to the Supreme Court. There it was held that the constitutionality of the statute referred to having been determined by the Supreme Court prior to the trial of this cause, that question was no longer open, and the amount of the judgment not being within the jurisdiction of the Supreme Court, the cause was transferred to our court. [See Turner v. Tyler Land & Timber Co., 259 Mo. 15, 167 S. W. 973.]

The constitutional question being out of the case, leaves it for our determination on its merits.

The errors here relied upon are founded upon the remaining defenses, as also on the claim that there is no evidence to support the verdict; to error in giving and refusing instructions; to error in the admission and exclusion of testimony, and to the amount of the verdict.

The accident involved happening on the 18th of March, 1907, section 6433, Revised Statutes 1899, governs, the words ''machines, machinery,'' having been interpolated into that section by the Act of June 14, 1909 (Acts 1909, p. 502). Hence section 7828, Revised Statutes 1909, must be read, for the purposes of this case, with those words eliminated.

It is argued that the trial court erred in over-ruling defendant's demurrers to the evidence in that the evidence, as disclosed by plaintiff and as a whole, showed that plaintiff, as a matter of law, was guilty of contributory negligence. We do not so construe the evidence. Plaintiff had worked as a ''bolter'' as his employment is called, that is, in the operation of a saw used in cutting up bolts out of timber, for only about half an hour prior to the accident, although working in and about the mill some months before. He had no particular knowledge of the manner of operating the bolter and its attachments prior to that. He testified that the foreman told him to ''run the bolter and keep the dust pipe cleaned out.'' Attached to and a part of the line shaft was what is called a clutch-coupler, which, revolving with the shaft, struck him on the head. This clutch-coupler had elbows or arms projecting about six or eight inches on each side of it, which, in its rapid movement, could not be readily seen, and plaintiff testifies in the most positive manner that he neither saw these nor knew of their presence. He went to the place where, in the ordinary discharge of his duty, he was bound to go, to clean out the dust pipe, which was in the pit and under the shafting and clutch-coupler, and it was while so engaged that he was struck by these projections. It is true that the version given

by plaintiff as to the foreman ordering him to clean. out this blow pipe, is contradicted by other witnesses, but that left it for the jury, under proper instructions, and we cannot disturb their verdict on this issue.

It is further argued that plaintiff had no cause of action because the statute applies only to such machines as are dangerous to employees while in the performance of their ordinary duties. There is substantial evidence that plaintiff was at the time engaged in his "ordinary duties," that is, at the time operating the bolter and in connection with that cleaning out the dust from the blow pipe. That the exposed and unprotected shafting, of which there is substantial evidence that this clutch-coupler was a part, was "so placed as to be dangerous to persons employed there or thereabout while engaged in their ordinary duties," (Revised Statutes 1899, sec. 6433) is clear. So the evidence shows and so the jury found.

A further assignment of error is that plaintiff could not recover, because, as is argued, the statute does not require the guarding of the character of clutch-coupler which caused the injury. We are referred, under this paragraph of the assignment, among other cases, to Strode v. Columbia Box Co., 250 Mo. 695, 158 S. W. 22. That may be taken as one of the latest decisions of our Supreme Court construing this statute. Applying that statute to the case then before the Supreme Court, it is said (1. c. 707), that as the belting which had caused the injury "simply passed through the floor, went around its pulley and went out into the room above and ran so far to find its driving pulley that the evidence speaks of it as an 'idle' pulley upon which it ran fourteen feet above the floor." Under these facts the court held that to guard this belt, in the sense in which it is claimed it should have been guarded, with its six or seven "idlers," it would have been boxed from end to end; that no one could tell which way any of the pieces of the belting would fly

if broken and to guard them in the sense suggested
would exclude all access to them and in many cases
materially embarrass their operation.

In Simpson v. Witte Iron Works Co., 249 Mo. 376,
155 S. W. 810, our Supreme Court also passed upon
this section of the statutes in a case where an employee
was tripped by a belt which was lying in the aisle,
thrown to the floor and permanently injured, it being
claimed that in its unprotected position the belt was
dangerous to employees. The court held that this belt-
ing need not be guarded, because it was not so placed
that its normal operation would injure an employee
who should approach near enough to be caught by its
force or subjected to its activity. The belting over
which plaintiff had stumbled occupied two-thirds of the
width of the passageway and was in a state of absolute
inertia and had no greater power to inflict the injury on
plaintiff than would have happened if he had stumbled
over or against a guardrail of equal height, eighteen
or twenty inches, so that the railing around it would
have been no less injurious to a man walking across it
with his head turned in another direction than was the
idle belt. In this latter case the authorities are so
thoroughly reviewed on the construction to be placed
upon this whole statute, and the chapter in which it is
found, that it is hardly necessary to refer to other
cases.

The evidence in this case presents an entirely dif-
ferent state of facts. There is affirmative evidence on
the part of plaintiff that it was entirely practicable to
have boxed or put a guard around this shaft with its
clutch-coupler so as to render it safe for the operator
working under it and that to have so guarded it would
have in no manner interfered with its operation.

Whether this clutch-coupler is part of the shaft-
ing, as several qualified witnesses testified that it was,
or whether it is gearing, gearing being defined gener-
ally as "the parts, collectively, by which motion is trans-

mitted from one portion of machinery to another" (Webster, New International Dictionary), it is clear that it was a part of either the one or the other, and hence under the provisions of section 6433, Revised Statutes 1899, before that section was amended. Judge Woodson, in Huss v. Heydt Bakery Co., 210 Mo. 44, l. c. 67, 68, 108 S. W. 63, has well said, treating of the underlying policy of this law: "The Legislature knew that the human mind and conduct were such that a servant in the performance of his duties to his master, surrounded by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery; and if not 'safely and securely guarded,' he would in consequence thereof receive injuries of a serious character." That meets the situation here very accurately.

It is further argued that plaintiff could not recover under the statutes sued upon as there was no evidence that the State Factory Inspector had directed the installation of guards on the coupling in question. This proposition has been disposed of adversely to defendant by our Supreme Court in Strode v. Columbia Box Co., supra, and also discussed and disposed of contrary to the contention of appellant by our court in Austin v. Bluff City Shoe Co., 176 Mo. App. 546, 158 S. W. 709.

In addition to the point against the constitutionality of the act which has been disposed of by the Supreme Court in Turner v. Tyler Land & Timber Co., supra, it is said that the statute sued upon by plaintiff has no application to the facts in this case as it applies only to cities of 5000 inhabitants or more. This statute was adopted substantially in its present form by an Act approved April 20, 1891. [Acts 1891, p. 159.] It

is true that the first section of the act, requiring the appointment of an inspector where the same is necessary, does in terms apply alone to cities of 5000 inhabitants or more. But the body of the Act is general. As originaly adopted it was entitled: "An Act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees." [See Session Acts, supra.] The fact that in the revision of 1899 it was placed in chapter 91, relating to "Cities, Towns and Villages," and that it is there designated as article XVII of that chapter and is headed "Factory Inspection in Cities with 5000 Inhabitants or More," does not alter the fact that the act itself, as adopted by the General Assembly, shows that it was general in its application and applied to all cities and towns; in short, to all manufacturing establishments wherever situated in the State. The revisors, merely compiling the statutes, by so placing and designating the act, could not change its meaning or application.

The point is made that plaintiff's petition wholly fails to state a cause of action, and that the trial court had erred in refusing to sustain defendant's objection, made *ore tenus,* to the introduction of any evidence whatever under that petition. The authorities cited under the first point are relied on for this, but we do not think any of them support it.

Another assignment of error is on the admission of incompetent testimony on the part of plaintiff, it being claimed to have been "opinion" evidence of witnesses, whom, it is said, were not qualified as experts, to the effect that this clutch-coupling could have been safely guarded without interferring with the operation of the machinery. This assignment is untenable. The witnesses referred to, it is true, were blacksmiths, but they were also machinists, so employed by defendant, and were the very men who were personally ac-

quainted with this particular appliance. Their testimony was properly admitted.

It is further urged that the court erred in excluding, on plaintiff's objection, competent testimony offered by defendant as to the proper method which should have been employed by plaintiff in cleaning the blow pipe. This is not tenable. There might have been other and safer methods for doing this work, but there is no evidence, nor did the evidence offered and excluded, tend to show that plaintiff was aware of these other methods. Even if it be true that there are two methods of doing a thing, one of them less dangerous than the other, it does not follow that the plaintiff is negligent or at fault because he happens to select the more dangerous.

The instructions given on behalf of plaintiff are objected to as erroneous and improper interpretations of the statute and as applied to machinery involved in this case. A careful consideration of those instructions fails to show this. To the contrary, our consideration of them satisfies us that they were drawn with very great care and in direct conformity to the statute and the issues made.

It is urged that the court erred in refusing fourteen instructions asked by defendant. It will serve no useful purpose to reproduce them. Eight of them were presentations of the defendant's claim that the act was unconstitutional. These are disposed of by the Supreme Court in its opinion in this case heretofore cited. The remaining instructions covered matter correctly set out in other instructions or were not the law.

Finally, it is urged that the verdict is so excessive as to indicate prejudice and passion.

The evidence of the physician who attended this young man on the day he was injured, tended to show that the injury was very severe, and that the effects resulting from it were apt to be permanent. It appears that this is the second trial of the case and that

on the former trial there was a verdict for plaintiff in the sum of $8000. Here it is for $7000. One of the physicians who attended him immediately after his injury, stated that plaintiff had sustained a fracture of the skull. When this physician first saw him he was unconscious. He further testified that about twelve hours after the injury, he and another physican assisting, trepanned the skull at the back of the head, removing two broken portions; that the skull was considerably depressed by the blow; had been fractured and driven in; that when the bone was removed, a blood vessel of considerable size was found to have bursted, compelling them to perform the operation of torsion, that is, twisting and tying it together. This surgeon further testified that at the time of this trial, which was over four years after the accident, the depression in the back of plaintiff's skull was still visible; that the injury, even after the wound healed, would be apt to superinduce headaches and nervous troubles. One of the at- tending physicians gave it as his opinion that the result might be a permanent affection of the nervous system of plaintiff. Another one testified that in his opinion plaintiff's nervous system is impaired and that the impairment might be due to the injuries which plaintiff had received. Asked if he had ever heard plaintiff complain of being nervous and of having pains in his head, neck or back, he answered that he had prescribed for him for some months after his injury and that he had complained of these symptoms. This was drawn out by counsel for defendant on cross-examination of this physician. Considering the evidence of the injury, its extent, its probable duration and after effects, we cannot say that the verdict was excessive or that it indicates prejudice, passion or bias.

In short, plaintiff's evidence, considered as a whole, tended to prove his case as set out in his petition.

We see no reversible error to the prejudice of defendant in the action of the court during the trial, and its judgment should be and is affirmed. *Nortoni* and *Allen, JJ.,* concur.