# FRED WRIGHT, Respondent, v. BERRY IRON & STEELE CO., Appellant.

### In the Kansas City Court of Appeals, April 30, 1923.

1. **NEGLIGENCE: Master and Servant: Pleading: The Gravaman of Action as Stated in Petition, Held Not to be Limited to Defendant's Negligence in Failing to Make Reasonable Inspection and Repair of Ladle so as to Prevent its Leaking.** In an action for damages for personal injuries to employee, the petition is held to charge negligence in furnishing a defective ladle causing molten metal to spill upon the ground, and in giving negligent order to set leaking ladle down and throw water on it resulting in an explosion, and that the allegations of negligence therein were not thereby limited to the charge of negligence in failure to make reasonable inspection and repair of ladle.

2. ———: ———: **Evidence Held Sufficient to Take Case to Jury on Question of Furnishing Defective Ladle.** In an action for damages for injuries to an employee resulting from explosion of molten metal, *held* there was substantial evidence to take case to jury on the question of negligence in furnishing a defective ladle in which the metal was contained.

3. ———: ———: **In Determining Question as to Whether Order of Foreman Was Negligent, Jury Required to Consider Circumstances and Customary Procedure of Doing Work Under Which Order Was Given.** In determining whether order of foreman, to set down leaking ladle and throw water upon it, whereby molten metal contained therein exploded, was negligent, it was proper for the jury to consider the conditions and circumstances at the time the order was given, and whether it was the usual and customary procedure under like conditions and whether the foreman knew, or should have known that carrying out of such an order might result in an explosion.

4. ———: ———: **Question of Whether Order of Foreman Was Violated Held Under the Evidence For the Jury.** Where evidence that plaintiff, instead of obeying order of foreman to set leaking ladle, containing molten metal, down and put water on it, moved the ladle to a damp place before setting it down, was disputed by substantial evidence that movement of ladle was prior to the giving of the order, the question of whether the order was violated was for the jury.

5. **INSTRUCTIONS: An Instruction Held Not Erroneous as Imposing Duty upon Defendant to Furnish Absolutely Safe Appliance.** An instruction purporting to cover entire case and directing a verdict, which told the jury that it was defendant's duty to use ordinary care to furnish plaintiff with a safe ladle, *held* not erroneous as imposing upon defendant the duty of furnishing plaintiff with an absolutely safe appliance.

6. ———: **An Instruction Submitting Question of Whether Employer Failed to Use Ordinary Care in Furnishng Safe Appliance, Held Proper.** In an action by employee to recover damages for injuries received by negligence of employer, an instruction submitting question whether employer failed to use ordinary care to furnish safe ladle for carriage of molten metal, was proper, where there was evidence tending to show lack of inspection of ladle and lining thereof.

7. **PLEADING: Evidence as to Position of Unsafe Appliance and Negligent Order of Foreman, Held Within the Pleadings.** Where petition alleged negligence in furnishing an unsafe ladle for conveyance of molten metal and that plaintiff's foreman gave negligent order to set ladle down and put water on it, evidence that ladle was placed on sloping ground and water ran under it causing explosion, *held* admissible as tending to show whether order was in fact negligent.

8. ———: **Not Necessary for Plaintiff to Set Out in Petition His Evidence in Detail.** It is not necessary that plaintiff set out in his petition his evidence in detail, the important requirement being that petition state facts sufficient upon which to base recovery.

9. **EVIDENCE: Experts: Opinions: Testimony of Witnesses as to Cause of Explosion Held Not to Invade Province of Jury.** Where plaintiff's witnesses testified that they had more or less extended experience in foundries, and were more or less familiar with the result of water getting under molten metal, and had witnessed explosions somewhat similar, *held* their testimony, in answer to hypothetical question as to what, in their opinion, caused the explosion, did not invade the province of the jury, particularly where the only theory of the cause of the explosion was that presented by plaintiff.

10. ———: ———: **Witnesses: Competency: Witness Competent to Testify as Expert, Though His Knowledge Touching Question at Issue Was Gained by Experience, Rather Than from Technical Study.** The rule is well settled that a witness may be competent to testify as an expert though his knowledge touching the question at issue was gained by experience rather than from technical study.

11. ———: Damages: Evidence of Injuries Not Pleaded, Held Admissible to Show General Physical Condition, Where Limited For That Purpose Only. Where there was no allegation in petition as to injury to kidneys, bladder or functions thereof, evidence concerning condition of urine for purpose of showing general condition of plaintiff was weakened on account of injuries claimed, *held* admissible for that purpose only.

Appeal from the Circuit Court of Buchanan County.— *Hon. L. A. Vories,* Judge.

AFFIRMED.

*Joseph M. Garvey* and *William E. Stringfellow* for respondent.

*Waldo P. Goff* and *Ryan & Zwick* for appellant.

ARNOLD, J.—This is a suit for damages for personal injuries alleged to have been sustained by plaintiff by reason of the negligence of defendant.

Defendant is a corporation engaged in a general foundry and manufacturing business in the city of St. Joseph, Mo. Plaintiff had been employed by defendant as an iron molder for a period of five years preceding the injury. The manner of performing the work in said foundry, as disclosed by the record, is as follows: The iron ore is melted in a cupola and when in a molten condition is poured into a receptacle in which it is moved by a power crane to the vicinity of molds of various forms, where it is transferred to portable steel ladles lined with fire brick and fire clay. These ladles, together with the molten metal therein, weigh ordinarily from 2400 to 2500 pounds, the ladle itself weighing from 300 to 500 pounds. The ladle thus filled is then suspended upon an endless chain swinging from an overhead rail and by means of pulleys can be raised or lowered by hand at will. Three men are required in the process of moving the ladle to the place desired and to fill the molds or forms therefrom. One of the men so employed oper-

ates the chain and the other two propel the suspended ladle by means of "U" shaped handles operated from opposite sides thereof, and the metal is poured from the ladle into the molds.

On June 2, 1921, plaintiff with two other workmen, named Jarrett and Rhodes, were moving a ladle so filled with molten metal, alongside a row of molds. The ladle was suspended about a foot and a half above the earthen floor of the foundry, and while so propelling the ladle, and after three of the molds had been filled, a leak developed in the bottom of the ladle and a stream of the molten metal approximately an inch and a half in diameter began to flow therefrom upon the ground. There was testimony tending to show that the customary way in which experienced foundry men handled such a situation was to propel the leaking ladle to a position immediately above a sand pile lower the ladle thereon and allow the metal to run out in the sand. On the occasion in question the ladle was above the dirt floor of the foundry at the time the leak developed, and the said floor immediately thereunder was of a slightly inclining surface.

One of the three workmen handling the ladle testified that when the leak was discovered, they started to push the ladle southward for the purpose of setting it down in some dry sand which had previously been dumped upon the ground from some of the molds (but the testimony of the other witnesses on this point is to the contrary;) and that before reaching said point, by order of the superintendent they immediately set the ladle down on the hard dirt floor. The testimony further tends to show that the superintendent's order was to "set the ladle down and get some water on it," or, "set it down and put water on it," or, "set the ladle down and throw some water on it."

The testimony shows that when the ladle was set upon the ground, the surface of which was on a slight decline toward a row of molds, the molten metal that had escaped therefrom ran down to and ignited the wooden,

or board bottoms of some of said molds above referred to; and that in compliance with the superintendent's order, the three men handling the ladle went away to get water. One of them, Rhodes by name, returned in two or three minutes, and threw about three gallons of water on the outside of the ladle and on the ground surrounding it, and then started to obtain more water. The second man, Jarrett, also came with a three-gallon bucket of water and threw one gallon "at the ladle," but he states he does not know exactly where it lit, but that it fell somwhere on the ladle. He then noticed that the metal which had spread out upon the ground around the bottom of the ladle was agitating, and believing an explosion likely to occur, he ran away.

The plaintiff, having secured a bucket of water, returned to the scene, observed the burning of the boards at the bottom of the molds while walking towards them with the purpose of throwing water on them, and when he was about ten feet from the leaking ladle, an explosion occurred whereby quanities of the molten metal were thrown upon him and he was thereby seriously burned.

The amended petition charges negligence, first, in that defendant "negligently failed to furnish plaintiff and the other workmen so engaged with a safe ladle for their use, but furnished them with a defective and unsafe ladle, and thereinafter conducted the work in which they were engaged in a negligent and dangerous manner, as hereinafter described; that while engaged in moving said defective ladle the metal contained in said ladle, because of its said defective condition, began to flow therefrom upon the ground, which constituted the floor of said foundry; that thereupon the defendant, acting through its foreman, agent and vice-principal, carelessly and negligently ordered this plaintiff and other workmen to set said ladle down and throw water on it; . . . that because of said order and said compliance or attempted compliance therewith, said metal was caused to and did explode; that defendant knew, or by the exer-

cise of ordinary care would have known, that under such conditions to set said ladle down and throw water on it would be liable to cause an explosion and injure said workmen;'' etc.

Permanent injury of plaintiff is pleaded, and damages prayed in the sum of $30,000.

The amended answer admits the corporate existence of defendant and that plaintiff was in its employ as alleged, and denies each and every other allegation of the petition. Further the amended answer pleads assumption of risk of injury by plaintiff for which defendant is not liable.

The reply was a general denial. At the close of all the evidence, an instruction in the nature of a demurrer was overruled by the court and the case submitted to the jury, resulting in a verdict and judgment for plaintiff in the sum of $6000. After an unsuccessful motion for a new trial, defendant appeals.

The first point urged by defendant in support of this appeal is that the court erred in refusing to give defendant's offered instruction in the nature of a demurrer, at the close of all the evidence. It is contended, in support of this assignment, that the gravaman of the action, as stated in the petition, is that defendant was negligent in its failure to make reasonable inspection and repair of the ladle so as to prevent its leaking. Opposed to this position, it is plaintiff's contention that the gravaman of the action is the negligent order of defendant's superintendent, and not the failure to make reasonable inspection and repair of the ladle.

The language of the petition fails to sustain the position of defendant on this point, for it expressly charges that defendant ''negligently failed to furnish plaintiff and other workmen so engaged with a safe ladle for their use . . . and thereafter conducted the work . . . in a negligent and dangerous manner, as hereinafter described . . . and negligently ordered this plaintiff and other workmen to set said ladle down and throw water on it . . . that because of said order

and said compliance, or attempted compliance therewith, said metal was caused to and did explode," etc.

The petition therefore charges negligence in furnishing a defective ladle for plaintiff's use, and by reason thereof, the metal was spilled upon the ground, and by reason of the negligent order to set the leaking ladle down and throw water on it, the explosion occurred and the damage was done. While there was some testimony introduced in an effort to show failure to inspect the ladle properly, the record shows the case was tried chiefly on the alleged negligent order of the foreman.

On the question of the alleged defect in the ladle, one of plaintiff's witnesses, Jarrett, who was one of the three men handling the ladle at the time of the injury, testified as follows:

"Q. How often, if you know, is that clay put into the ladle, when the ladle is in use? A. Some parts are put in every day.

"Q. Is it necessary to repair the fire clay lining of such a ladle in daily use once a day? A. Unless it is damaged, the lining.

"Q. Is it necessary to watch for that? A. Yes.

"Q. Whose duty was it in that foundry to see that those ladles, including the ladle in use at this time, were in proper condition, so far as being properly lined with the brick and fire clay is concerned?

"MR. ZWICK: We object to any testimony along that line. There is no allegation in the petition of any failure to line this ladle.

"THE COURT: Do you charge that the defective ladle had anything to do with the accident?

"MR. STRINGFELLOW: I will read that part of the petition."

(Part of the petition was read by Mr. Stringfellow.)

"THE COURT: Let the witness answer the question. The objection is overruled."

Defendant saved its exceptions.

"Q. I asked if you knew whose duty it was to see

that that ladle was kept safely lined with fire clay before it was put into use? A. Jim Wilson . . . Cupola tender."

There was testimony tending to show that the particular ladle in which the hot metal exploded had been used two or three times that day before the explosion occurred, and that it was not relined on that particular day. In the face of this record, we are not able to say that there was not substantial evidence to take the case to the jury on this point. But, as stated above, the chief controversy between the parties related to the alleged negligent order of the foreman to set the ladle down and put water on it.

In determining whether this was a negligent order, it was proper for the jury to consider the conditions and circumstances in the foundry at the time the order was given; whether it was the usual and customary procedure under like conditions, and whether the foreman knew, or should have known that the carrying out of such an order might result in an explosion. There seems to be little or no difference between the parties as to the rules of law governing this question, but the parties differ as to the facts.

It is urged by defendant on this point that "no man is held by law to be an insurer of his employees, and that the explosion and resulting injury to plaintiff was not due to the obedience of the order of the foreman, but was due to its violation." It is pointed out that when the foreman gave the order, instead of obeying it immediately, plaintiff and his two fellow workmen moved the ladle ten feet to the south where there was some damp ground and sand, and when the ladle was deposited thereon, a pocket was formed under it and this caused the explosion. This position of defendant is based upon the theory that the leaking ladle was moved about ten feet south after the order to set it down was given.

There is, however, substantial evidence tending to show that the movement of the ladle to the south was prior to the giving of the order to set it down, thus

raising an issue of fact for the jury. The witness Jarrett testified that prior to the giving of the order by the foreman to set the ladle down, the workmen, knowing the proper procedure was to run the ladle to the sand and allow the metal to run out in dry sand, were pushing it south for that purpose, and that the intervening order of the foreman caused it to be lowered to the ground before reaching the sand. There was other testimony on this point, and as there was substantial evidence in support of plaintiff's theory of the case, there was no error in submitting it to the jury.

The second assignment is that the court erred in giving plaintiff's instruction No. 1, over the objection of defendant. This instruction purports to cover the entire case and directs a verdict. The objection urged against it is that it tells the jury that it was defendant's duty "to use ordinary care to furnish plaintiff and other workmen so engaged with a safe ladle for their use." It is urged that this is not the law, and that "no duty devolves upon the master to furnish his employee absolutely safe tools or appliances."

We think the instruction is not open to this criticism. It will be noted that the wording is that defendant "failed to use ordinary care to furnish plaintiff . . . with a safe ladle . . ." The language of the petition is "that it was the duty of defendant to furnish its employees with reasonably safe appliances," etc. The obvious meaning of the instruction is that defendant "failed to use ordinary care to furnish . . . a safe ladle." This necessarily would involve the question of inspection and repair of the ladle, and as there was testimony tending to show the lack of inspection and lining of the ladle on the day of the explosion and injury, it was proper for the jury to consider the question as presented in the instruction. The language of the instruction clearly directs attention to the question of whether defendant used ordinary care in furnishing a safe ladle for the plaintiff's use, and does not direct that it was defend-

ant's duty to furnish a safe ladle. The distinction is obvious.

In Henson v. Stave Co., 151 Mo. App. 234, 131 S. W. 931, an instruction was held to be erroneous which "placed upon defendant the absolute duty to furnish plaintiff a reasonably safe place to work, whereas the law only requires that the defendant use ordinary care to furnish a reasonably safe place." [See also Eudy v. Lead Co., 220 S. W. 504, 505.] In Van Bibber v. Swift & Co., 228 S. W. 69, 1. c. 74, the Supreme Court said:

"The master only is required to exercise reasonable care to furnish the servant a reasonably safe place to work and reasonably safe appliances. [Brands v. St. Louis Car Co., 213 Mo. loc. cit. 707, 708, 112 S. W. 511, 18 L. R. A. (N. S.) 701; Grattis v. Railroad, 153 Mo. loc. cit. 404, 55 S. W. 108, 48 L. R. A. 399, 77 Am. St. Rep. 721; Tabler v. Railroad, 93 Mo. 79, 5 S. W. 810; Johnson v. National Newspaper Ass'n (App.), 183 S. W. 1113; Franklin v. Railroad, 97 Mo. App. 473, 71 S. W. 540; Glasscock v. Swofford Bros. D. G. Co., 106 Mo. App. 657, 80 S. W. 364; McGinnis v. Hydraulic Press Brick Co., 261 Mo. 287, 169 S. W. 30, L. R. A. 1915 F. 583.]"

This ruling also covers defendant's charge of error in the admission of evidence outside the pleadings. It is urged that plaintiff alleged in his petition that defendant furnished an unsafe ladle and that defendant's foreman gave a negligent order, but that plaintiff not only was permitted to prove those facts, but also was allowed to prove, over the objections of defendant, that the ladle was lowered where the ground was soft and damp and where there was a sharp incline of about five inches; that the ladle was so placed on the sloping ground that the water ran under it and caused the explosion, and that the safe method was not to let the ladle down until they got to the sand pile. It is contended that this proof was all outside the allegations of the petition.

Defendant's objection is not well taken. We accept plaintiff's position on this point as correct, to the effect

that as the petition only alleged the furnishing of an unsafe ladle and the giving of a negligent order to set the ladle down and put water on it, that under these allegations the proof was properly admitted as tending to show whether the order was, in fact, negligent. The proof that the ground was sloping where the ladle was put down was merely incidental in support of the charge that the foreman's order was erroneous in having the ladle lowered at that particular place. It is not necessary that plaintiff set out in his petition his evidence in detail. The important requirement is that the petition state facts sufficient upon which to base a recovery. [McNees v. Railway Co., 22 Mo. App. 224; Moormeister v. Hannibal, 180 Mo. App. 717, 168 S. W. 250; Gordon v. Bleek, 223 S. W. 265.]

It is further charged as error that the court admitted the testimony of expert witnesses Kerrigan, Lynch and Roberts, over the objection of defendant "because said witnesses admitted that they did not know, nor had they made any study from a scientific standpoint to ascertain the cause of the explosion under like or similar circumstances." The record shows that these witnesses testified that they each had had a more or less extended experience in foundaries and were more or less familiar with the result of water getting under molten metal, and all had witnessed explosions somewhat similar to the one in this case. The rule is well settled that a witness may be competent to testify as an expert though his knowledge touching the question at issue was gained by experience rather than from technical study. It was held in Turner v. Timber, etc., Co., 188 Mo. App. 481, l. c. 493, 174 S. W. 184:

"The witnesses referred to, it is true, were blacksmiths, but they were also machinists, so employed by defendant, and were the very men who were personally acquainted with this particular appliance. Their testimony was properly admitted."

To the same effect is Herman v. Amer. Car & Foundry Co., 245 S. W. 387, (St. Louis Court of Appeals.) The

213 M. A.—39

correct test is whether the jury will be aided by the evidence offered. The competency of the witness is largely a matter of discretion of the trial court, and his ruling will not be disturbed except in cases of abuse of this discretion. [Combs v. Rountree Const. Co., 205 Mo. 367, 104 S. W. 77; Bradford v. Railway, 64 Mo. App. 475; Benjamin v. Railway, 50 Mo. App. 602.] It is charged these witnesses were allowed to invade the province of the jury in giving their opinions of the cause of the explosion. In view of what we have said above, we hold this objection to be without merit. These witnesses were not asked to give their opinions as to what caused the explosion, but under the facts and circumstances stated in the hypothetical questions, what, in their opinion, was the cause of the metal being thrown. The objection is based upon the fact that the witnesses were not shown to have scientific knowledge and because there was no evidence so far developed that the witnesses had ever seen a similar explosion.

This objection was properly overruled. We hold the answers of the witnesses, under the circumstances, did not invade the province of the jury. As was said in Bragg v. Railway Company, 192 Mo. 331, 1. c. 343, 91 S. W. 527, "the form of the objection in hand did not direct the lower court's mind to the contention that the expert was asked to decide the very matter presented to the jury—to usurp the exclusive and ancient province of the triers of fact."

In the case at bar the only theory of the cause of the explosion presented was that of plaintiff, and the witnesses therefore were not asked to give an opinion as between two theories. They invaded no province of the jury under these circumstances. [Johnson v. Traction Co., 178 Mo. App. 445, 163 S. W. 896.]

Finally it is charged that the trial court erred in permitting Dr. Higdon to testify as to the condition of plaintiff's kidneys, bladder and urine, over the objection of defendant, since there was no allegation in the petition of any injury to these organs or their function.

That this charge of error is not well founded is evident from the following extract from the testimony of this witness, on re-direct examination:

"Q. I will ask you if there are any permanent injuries the man has received which you have not testified to as permanent?

"ATTORNEY FOR DEFENDANT: We object to that.

"THE COURT: If the witness has in the meantime refreshed his memory, and it is outside of-anything testified to, the court will permit that.

"ATTORNEY FOR DEFENDANT: Other than he has testified to.

"A. I haven't offered my opinion as to the condition of his kidneys or heart.

"ATTORNEY FOR DEFENDANT: We object to that on the ground that it is not alleged in the petition."

The objection was sustained and witness was permitted to testify concerning the urine and also the pulse and heart only for the purpose of showing the general condition of the patient was weakened on account of the injuries claimed. We think the ruling was proper and that this evidence was admissible for the purposes stated.

Finding no reversible error of record, the judgment is affirmed. All concur.